BEVERLY FAY FUNKHOUSER

*v.*

RONALD ROSCOE FUNKHOUSER

(No. 13578)

Decided July 1, 1975.

*Richard L. Douglas Rice, Hannis & Rice,* for appellant.

*Charles A. Kiser, Rodgers & Kiser,* for appellee.

CAPLAN, JUSTICE:

This is an appeal from a final order of the Circuit Court of Berkeley County entered on September 12, 1974 in an action for divorce wherein Beverly Fay Funkhouser, the plaintiff below and appellant here, was awarded a divorce from Ronald Roscoe Funkhouser. Although in that proceeding the court granted the plaintiff a divorce, it awarded custody of the minor child born of that marriage to the husband. The appellant, Beverly Fay Funkhouser, now seeks a reversal of the court's order only insofar as the custody of the child is concerned.

Beverly Fay Funkhouser, herein called plaintiff, and Ronald Roscoe Funkhouser, defendant, were married to each other on August 26, 1966 in Berkeley County, West Virginia. On January 15, 1970 Ronald Todd Funkhouser was born of that marriage. During the month of June, 1970 the plaintiff and defendant were involved in an automobile accident in which they both received serious injuries. The plaintiff, however, received more serious injuries, including injuries to the brain, which rendered her unconscious for a period of approximately six weeks. For approximately six months following the accident the plaintiff was substantially incapacitated and was unable to take care of herself, her husband or her child. During this period of recuperation, upon leaving the hospital, the plaintiff and her family moved in with her husband's parents and the paternal grandmother took care of the infant child.

In December, 1970 the plaintiff was sufficiently recovered so that she could take care of herself and her family and they moved into a mobile home on the property

of her husband's parents where they cohabited as husband and wife until January, 1973. Sometime during that month, domestic problems having arisen, the defendant left the marital domicile and moved in with his parents. The plaintiff continued to live in the mobile home with her child until March of 1973 when the defendant without the consent of the plaintiff took the child and placed him in the home of his mother where the child to this day has resided.

The plaintiff, in April, 1973, instituted an action against the defendant in the Circuit Court of Berkeley County wherein she sought a divorce. On April 23, 1973 a preliminary hearing was held, during which several witnesses were heard on behalf of each party. Basically, the witnesses for the plaintiff, including her mother and an aunt, testified that Beverly was a fine mother and was well able to take care of her child. On the other hand, the defendant's witnesses, including the defendant and his mother and father, testified that Beverly was not rational or stable and should not have custody of the child. The latter line of testimony related to her mental condition, allegedly resulting from the brain injury received in the 1970 accident.

The court noted "if she is mentally and physically able to have the custody of the child and she is not *in* otherwise an unfit person * * * she is entitled to have her child. * * * I think all along that a mother of a three year old infant is entitled to be the mother of it unless there is some good reason to the contrary." The court then, out of an abundance of caution and with obvious concern for the child, decided to leave the child where it was, pending the divorce action, and awarded temporary custody to Margie Funkhouser, the defendant's mother. The trial judge then directed counsel for the plaintiff to have Beverly Funkhouser examined by a physician and a psychiatrist to determine her physical and mental ability and capacity to take care of her son.

There were no further proceedings in this matter until August 1, 1974. During that interim the plaintiff contin-

ued to reside in the marital domicile on the Funkhouser property until October, 1973 when she left and moved into the home of her parents. Also during that period the plaintiff consulted a psychiatrist and a psychologist.

At the final hearing on August 1, 1974, the plaintiff produced as a witness Dr. Hiram Sizemore, Jr., a duly licensed psychiatrist. Dr. Sizemore related that he had seen Beverly Funkhouser on three occasions, the last visit having been in the spring of 1974. Upon being asked his opinion as to the plaintiff's emotional fitness to have custody of the child, he answered "I can find nothing at the present time which I think would interfere with her ability of being a mother or taking custody of the child." He further stated that during the last year she had shown responsibility in working, in keeping her appointments and in following recommendations made to her. Dr. Sizemore also noted that there was no indication of any physical disorder on the part of the plaintiff.

Dr. William H. Clark, a clinical psychologist at the Institute of Mental Health Center, Martinsburg, West Virginia, testified for the plaintiff. He related that he saw the plaintiff professionally the first time on September 12, 1973 and that he had seen her twice a month since; and that during three of those sessions the plaintiff's son was with her. He testified that her behavior was normal; that she was of normal intelligence; and that in his opinion she was physically, mentally and emotionally able to take care of her child. His comments concerning her relationship with her child were most favorable.

No testimony was offered by the defendant to dispute the testimony offered by these doctors; nor was there any offer of testimony designed to show that the plaintiff was in any manner physically or morally unfit to have custody of her child.

The remaining testimony adduced at the final hearing consisted of witnesses for the plaintiff who related that she would be an ideal and fit mother for the child and witnesses for the defendant who related that the plain-

tiff had fits of temper, was unstable and would not be a good mother. Interestingly, the witnesses for the plaintiff, other than herself, were her aunt, her mother and a close friend; for the defendant, he, his sister and his mother and father appeared. The behavior pattern of the plaintiff related by the latter witnesses concerned a period of time at least nine months prior to the hearing.

At the conclusion of the hearing the court awarded a divorce to the plaintiff on the ground of cruelty but granted custody of their child to the defendant. In its holding the court did not rule on the physical and mental ability of the plaintiff to have custody of the child, but, citing *Holstein v. Holstein,* 152 W. Va. 119, 160 S.E.2d 177 (1968), held that the plaintiff had not met the burden of showing that a change of custody was in the best interests of the child. Contending that the court's decision and order were contrary to the law and evidence, the plaintiff prosecutes this appeal.

Presented for resolution on this appeal is the propriety of the trial judge's action in awarding the custody of the child to the father. As noted above, the court treated this as a change of custody case and applied the law set forth in *Holstein v. Holstein, supra.* In that case the mother of the child had been awarded a divorce and the custody of her two minor children. Subsequently, by reason of her own indiscretions, the custody of said children was taken from her and was placed with her former husband, their father. The case involved her attempt to regain custody of the children.

*Holstein* was purely a change of custody case wherein this Court held that the mother would not be permitted to regain custody unless she could show that the proposed change of custody would materially promote the moral and physical welfare of the children. In the case at bar the custody of the child, as between the parents, is being determined for the first time. It is the position of the appellee father that because the child has been with him by reason of the award of temporary custody to his mother, any award of custody in this proceeding

to his wife, the child's mother, would constitute a change of custody. Consequently, he says, it was incumbent upon the plaintiff to show that the change of custody would benefit the child.

While we agree that the consideration of the child's welfare is of urgent consideration in determining a child's custody, we do not agree with the defendant's reasoning or conclusion wherein he asserts that this is a change of custody case. If this reasoning were followed, any time that temporary custody was awarded in a divorce proceeding the temporary custodian, if fit and materially able to care for the child, would be placed in an unfairly advantageous position. In that circumstance, a materially lesser endowed parent who could not demonstrate that his receiving custody would materially benefit the child, may be deprived of such custody. *See, Whitman v. Robinson*, 145 W. Va. 685, 116 S.E.2d 691 (1960). The instant case is not a change of custody case and the plaintiff is not charged with the same burden as was the mother in the *Holstein* case.

Although this Court has long held that in a contest over the custody of an infant the welfare of the child is the polar star by which the discretion of the court will be guided, *Lipscomb v. Joplin*, 131 W. Va. 302, 47 S.E.2d 221 (1948), it has just as firmly subscribed to the proposition that where the child will be equally well cared for by either parent, the mother, in preference to the father, is entitled to its custody. The latter is especially so where the child is of tender years. *Beaumont v. Beaumont*, 106 W. Va. 622, 146 S.E. 618 (1929). *See, Campbell v. Campbell*, 203 Va. 61, 122 S.E.2d 658 (1961); 24 Am. Jur. 2d, *Divorce and Separation*, Section 785. In the case at bar the child was four years of age when the final hearing was conducted.

In *Settle v. Settle*, 117 W. Va. 476, 185 S.E. 859 (1936), an appeal in a divorce action involving only the custody of the minor children, the Court, noting that neither of the parties was without blemish and that each was entitled in the same degree to such custody, awarded custo-

dy of the children to the mother from September through May of each year, until further order of the court. In so holding the Court considered the tender age of the children and expressed the positive view that for the welfare of the children the longer period of custody should be reposited with the mother. Quoting from *Cariens v. Cariens*, 50 W. Va. 113, 40 S.E. 335 (1901), the Court said:

> The law as to the custody of children has been greatly modified. Formerly, the right of the father to its custody was almost an inflexible rule. That rule forgot that a mother had a heart. The real owner of the child, be it even a baby, must give it up. But civilization, advanced thought and human kindness have bent this iron rule and opened the ears of the courts to the pleading of the true friend and owner of the child. The courts do not these days inexorably take from mothers their children of tender years even for the father, if the mother is a fit person, and has a home for them, but look at all the circumstances. The welfare of the child is the test. The welfare of a tender child is with the mother generally.

"With reference to the custody of very young children, the law favors the mother if she is a fit person, other things being equal * * *. But over and above all other lines of approach stands the welfare of the children, by which consideration, in the last analysis, the discretion of the courts is to be guided." Point 2, Syllabus, *Settle v. Settle, supra.* Accord: *Hughes v. Hughes*, 113 W. Va. 698, 169 S.E. 403 (1933); *Reynolds v. Reynolds*, 109 W. Va. 513, 155 S.E. 652 (1930); *Rierson v. Rierson*, 107 W. Va. 321, 148 S.E. 203 (1929).

There is no inconsistency in the two stated propositions: (1) that the welfare of the child is the polar star by which the discretion of the court will be guided; and (2) that with reference to the custody of very young children, the law favors the mother if she is a fit person, other things being equal. We firmly believe that it is

necessarily implicit in the language of *Cariens, Settle, Hughes* and other cases herein cited that a mother's natural love, affection and care of a child of tender years is essential to the welfare of that child. In other words, we believe that the decisions of this Court, in favoring the mother over the father in proper custody cases, clearly reflect the light that shines from the polar star which compels consideration of the welfare of the child.

The evidence in the instant case has been alluded to and commented upon above and it is deemed unnecessary to further detail any testimony. That evidence shows, without dispute, that the plaintiff, Beverly Fay Funkhouser, did not voluntarily relinquish the custody of her child; nor was the child taken from her by reason of any wrongdoing on her part. Rather, her husband took her child from her without her consent and in spite of her plea to leave him with her. She was deprived of the care and custody of her child through no fault of her own.

The record of the proceedings in the trial court fully supports the plaintiff's contention that she is physically, mentally and morally fit to assume permanent custody. Not only does the evidence show her to be a fit person to have custody of her child, neither her husband nor any witnesses who testified on his behalf even attempted to attack her moral character. Those witnesses did testify that, in their belief, the plaintiff did not display a behavioral pattern which would demonstrate that she would be a good mother. On the other hand, the plaintiff's witnesses testified that she has been and will be an excellent mother.

Upon consideration of all the testimony the trial judge did not rule on the question of the physical and moral ability of the plaintiff mother to assume the care and custody of her child. He did not express in any manner a belief that the mother was not fully able to care for her young child. Instead, he stated in his opinion that he was "bound" by the *Holstein* decision and required the

plaintiff to prove that the change of custody to her would materially promote the moral and physical welfare of the child.

As noted earlier in this opinion the case at bar is not a change of custody case. Although the best interest of the child must always be a prime consideration, a mother's natural right to the custody of a child of tender years is of equal importance. The court wrongfully treated this as change of custody case and in so doing placed an undue burden on the plaintiff. By reason of the strong precedent in this jurisdiction under which a mother, if fit, is preferred over the father in a custody contest between them, we are of the opinion that the trial court erroneously applied the law of the *Holstein* case.

We are fully cognizant of the well established rule that the exercise of discretion by the trial court in awarding custody of a minor child will not be disturbed on appeal unless that discretion has been abused. We abide by that rule. However, where the trial court's ruling does not reflect a discretionary decision but is based on an erroneous application of the law and is clearly wrong, the ruling will be reversed on appeal. As stated in *Tomkies v. Tomkies and the National Bank of Summers,* ___ W. Va. ___ (decided June 17, 1975); quoting Syllabus Point 8, *Bluefield Supply Company v. Frankel's Appliances, Inc.,* 149 W. Va. 622, 142 S.E.2d 898 (1965);

> When the finding of a trial court in a case tried by it in lieu of a jury is against the preponderance of the evidence, is not supported by the evidence, or is plainly wrong, such finding will be reversed and set aside by this Court upon appellate review.

*See also, Work v. Rogerson,* 152 W. Va. 169, 160 S.E.2d 159 (1968); *J. & G. Construction Co. v. Freeport Coal Co,* 147 W. Va. 563, 129 S.E.2d 834 (1963).

In view of the foregoing, we are of the opinion that the best interests of the child, at its present age, will be

served by the awarding of his custody to his mother. The judgment of the Circuit Court of Berkeley County is, therefore, reversed and the case remanded for further proceedings consistent with the principles enunciated herein.

*Reversed and remanded.*