575 S.E.2d 272

**In re the Marriage of B.M.J., Petitioner Below, Appellant,**

v.

**J.D.J., Respondent Below, Appellee.**

**No. 30516.**

Supreme Court of Appeals of West Virginia.

Submitted Nov. 6, 2002.

Decided Dec. 2, 2002.

Mark A. Swartz, Esq., Crystal S. Stump, Esq., Swartz & Stump, L.C., Charleston, West Virginia, for Appellant.

Michele R. Rusen, Esq., Rusen & White, PLLC, Parkersburg, West Virginia, Attorney for Appellee.

PER CURIAM:

The sole issue in this case is whether the Circuit Court of Wood County erred by granting custody of Ryan J. and Kristen J.[1] to their father, J.J., rather than their mother, B.J., when Ms. J.'s live-in boyfriend admits he committed and was convicted of deviant sexual behavior. We believe the circuit court committed no error, and accordingly, affirm.

1. In this case involving sensitive facts, we adhere to our usual practice of referring to the parties and other individuals by their initials rather than by their complete surnames. *See In re Emily,* 208 W.Va. 325, 329 n. 1, 540 S.E.2d 542, 546 n. 1 (2000). We acknowledge that we have at times in similar cases referred to the parties by their surnames and all other interested persons by their initials. *See DiMagno v. DiMagno,* 192 W.Va. 313, 452 S.E.2d 404 (1994) (per curiam). However, under the facts of this particular case, we believe surnames should not be divulged.

## I.

## FACTS

The facts are not in dispute. Ms. J. and Mr. J. were married on December 1, 1984. Two children, Ryan and Kristen, were born to the marriage. Ryan was born on April 12, 1986 and is now sixteen years old. Kristen was born on September 17, 1988 and is now fourteen years old. Ms. J. began an extramarital affair with Mark P. in September of 1998 and filed for divorce on April 2, 1999. The parties were divorced on September 5, 2001.

Following a preliminary hearing, the family law master entered a preliminary order on May 18, 1999, which granted temporary custody of the children to Ms. J. Each party agreed that the other party was a good parent. Ms. J. was a stay-at-home mom while Mr. J. worked long hours as a car salesman. The parties agreed that Mr. J. would temporarily pay Ms. J. $1200 per month for alimony and $685 per month for child support.

Two months after Ms. J. filed for divorce, rumors began to surface in the community regarding Mark P.'s past deviant sexual behavior. Mark P.'s criminal record was verified. The record submitted to us on appeal reveals that Mark P. has three convictions for deviant sexual behavior.[2] His first conviction followed an incident that happened on November 3, 1989. Mark P. was driving around the campus of San Diego State University when he spotted three blonde female students. He pulled down his pants and exposed himself to the young women. He was convicted of lewd behavior and sentenced to community service and probation. The second and third incidents occurred on August 20, 1991 and August 23, 1991, respectively. On August 20, 1991, Mark P. was walking down the street in Jacksonville, Florida, when he passed a thirty-one-year-old mother walking with her ten-year-old

daughter. As he passed, he asked the woman, "What about a good f_____?"[3] On August 23, 1991, Mark P. was jogging in Florida when he grabbed the buttocks of the woman jogging in front of him. For these two incidents, he was convicted of battery and soliciting for lewdness and sentenced to house arrest.

Mark P. discussed another incident when he was deposed during his divorce proceedings. He stated that on January 20, 1990, he was painting a house in Florida when a twelve or thirteen-year-old girl visited the property. The conversation he had with the girl turned to the subject of masturbation. He said that she asked him what masturbation was and he pulled down his pants and showed her. The girl told her friend who told her mother and the police were called. Following a brief investigation, Mark P. denied that the incident happened and the case was closed. He has now admitted that the incident did occur.

During his divorce deposition and also during a taped telephone conversation that he had with Cindy P., his wife, Mark P. admitted that he uses pornography and commits voyeurism; he exposes himself and masturbates while committing voyeurism; he has solicited oral sex sixty to eighty times from males in adult bookstores, adult theaters, and public restrooms in the Parkersburg area. He contends that each of these solicitations involved a consenting adult male. We also note that the record indicates that during the pendency of his divorce, Mark P. was permitted no visitation with his own children.

Based on this knowledge, on June 3, 1999, Mr. J. filed a motion to modify the preliminary order. Mr. J. asked that he be granted custody of the children and that Ms. J.'s visitation not take place in the presence of Mark P. Mr. J. answered the divorce complaint on June 4, 1999. In his answer, he

2. Mark P. filed for divorce from Cindy P. on December 15, 1998. Evidence of deviant sexual behavior and criminal convictions was revealed during the P. divorce proceedings. This evidence was presented to the family law master and circuit judge during the J.s' divorce to assist the court in making decisions regarding custody of the J. children.

3. The offensive language included in this opinion is for the sole purpose of describing Mark P.'s past behavior. After reviewing the evidence submitted on appeal, it was determined that there is no other way to effectively review and report the evidence considered by the circuit court in deciding which parent should have custody of Ryan and Kristen.

conceded that prior to her relationship with Mark P., Ms. J. "was a fit and proper person to have custody of the children[.]" He alleged that Ms. J. "knowingly exposed the children" to a person "who present[ed] a danger to [their] health, safety and welfare[.]" He counterclaimed seeking custody and control of the children. His motion to modify custody was denied; however, Ms. J. was ordered to permit no contact whatsoever between Mark P. and the J. children. She was also ordered to prohibit Mark P. from being present in the home when the children were present.

Believing that Ms. J. was violating the court's order by allowing Mark P. to have contact with the children, Mr. J. filed a second motion to modify the preliminary order on October 22, 1999. On October 25, 1999, Mr. J. filed a petition for contempt against Ms. J. This motion was followed by a motion for emergency ex parte relief on November 1, 1999. The family law master held an expedited hearing on all outstanding motions. Ms. J. then filed a motion requesting that a *guardian ad litem* be appointed to represent the interests of the children.

No action was taken on the motions other than to appoint a *guardian ad litem* who conducted an investigation. After noting that he was disturbed by the fact that Ms. J. "seem[ed] so willing to risk losing custody of her children to have a relationship with Mr. P.[,]" the *guardian ad litem* recommended "with some trepidation" that the children's desire to live with their mother be honored. This recommendation was tempered with a limitation that Ms. J. not leave the children alone with Mark P. Furthermore, the *guardian ad litem* stated that his "recommendation would probably immediately change upon knowledge of any acting out by Mr. P., whether it be towards the J. children or others."

The *guardian ad litem* attached a letter to his report from Mark P.'s therapist, Susan McQuaide. In the letter, Ms. McQuaide stated, "M.'s presenting problem included sexually acting out hands off offenses (Voyeurism, exhibitionism, frottage) towards adults. In my professional opinion, I do not believe the [sic] M.P. has molested any children, nor do I

see him at risk of sexually abusing children." The therapist saw no reason why Mark P. could not have supervised contact with the J. children as long as Ms. J. was always present. Ms. J. filed a motion to modify the preliminary order asking that Mark P. be permitted to have contact with her children. The motion to modify was denied.

Following a hearing, the family law master found that Ms. J. "violated the letter and spirit of the preliminary order[]" by allowing Mark P. to be present around the children. The family law master reasoned:

Mrs. J. defied the court order by allowing Mr. P. to stay, at the very least, in the back yard all night while her children were sleeping in the house. Mr. P. was at the children's extra-curricular activities and church events. It is very clear that Mrs. J. is unwilling or unable to end this relationship. If the court were to take her at her word and leave the children in her custody, she in all likelihood would continue to see M.P. in some surreptitious fashion. Mr. P. can not [sic] be cured of his condition, he can only hope to control it. . . .

There is no way that Mrs. J. can adequately supervise these children to protect them from the possibility of their being involved, if only tangentially, in Mr. P.'s disease and its manifestations. Children should not have to grow up in a home where obscure diagnoses from the DSM are a part of daily life. They should not have to worry if their mother's friend is engaging in playful or affectionate behavior or relapsing into his "frottage" conduct. Children should not have to worry if one of their friends may trigger some reaction in Mr. P. Children should not have to worry about the consequences of Mr. P.'s behavior on their lives. The presence of a parent who can maintain a home, provide good care and nurturing should make this unnecessary and Mr. J. stands ready to provide this home.

The family law master ultimately recommended that Mr. J. be granted permanent custody of the children subject to Mrs. J.'s schedule of visitation. The circuit court affirmed the family law master's recommended

order. It is from this order that Ms. J. appeals.

## II.

## STANDARD OF REVIEW

■ "The exercise of discretion by a trial court in awarding custody of a minor child will not be disturbed on appeal unless that discretion has been abused: however, where the trial court's ruling does not reflect a discretionary decision but is based upon an erroneous application of the law and is clearly wrong; the ruling will be reversed on appeal." Syllabus Point 2, *Funkhouser v. Funkhouser*, 158 W.Va. 964, 216 S.E.2d 570 (1975).

Syllabus Point 1, *David M. v. Margaret M.*, 182 W.Va. 57, 385 S.E.2d 912 (1989).

## III.

## DISCUSSION

■ Ms. J. contends the circuit court erred by depriving her of custody of her children based solely on her relationship with a third party when she was found to be the primary caretaker or parent performing the vast majority of caretaker functions and a good and fit parent. Ms. J. argues that the family law master disregarded the evidence and substituted her own personal opinions and biases to effectuate the result she desired. She maintains this is so because three experts said they believed Mark P. was not a threat to the J. children, and Mr. J. presented no evidence to negate these conclusions. Ms. J. also believes that Mark P. is not a convicted sex offender because his convictions were for misdemeanors which do not require him to register as a sex offender under the Sex Offender Registration Act, W.Va.Code §§ 15–12–1 to 10.

Ms. J. offered reports from two psychologists to support her position. Mark P. was referred to Dr. Henry Adams after his wife, C.P., accused him of molesting one of their sons. Following Dr. Adams' examination, the psychologist concluded:

In summary, Mr. P. is generally functioning within the normal limits of personality adjustment. He demonstrated a sex-ual arousal pattern that shows a sexual interest with adult females and males. While he has exhibit[ed] sexual deviation, this behavior has always involved adults. There was no indication of any sexual arousal or abuse tendencies towards children. I recommend that Mr. P. continue his treatment for sexual deviation with adults.

We note that Dr. Adams' report completely fails to mention the incident where Mark P. masturbated in the presence of a thirteen-year-old girl. Neither does the report mention that a ten-year-old child was present when Mark P. solicited sex from the girl's mother. Mark P. apparently did not tell the psychologist that his behavior during these two incidents involved children.

During the custody battle involving his three children, Mark P. self-referred for evaluation to Dr. Fred Krieg. Mark P. was attempting to regain contact with his children. Following Dr. Krieg's evaluation, the psychologist concluded:

Based on a review of records from Susan McQuaide as well as information gathered in this current assessment, Mr. P. does not present as a pedophile or as a client with a pattern of sociopathic tendencies at this time. While he does have a long history of sexual deviance to include hands-off offenses toward adult females, these acts have not involved young children. Mr. P. has been involved in an intensive treatment program for one year, and has accepted responsibility for his actions, with a focus on maintaining his personal relapse prevention plan. Depression has been an issue for Mr. P. since the separation from his children, but he appears to be dealing with this problem and remains hopeful that he will have contact with his children in the near future. Regardless of past history, the client certainly does not appear to be a danger to his children or to Ms. J.'s children at this time.

Although the purpose of this evaluation is not to determine custody or visitation arrangements, it is strongly recommended that the family be referred for such an evaluation in order to determine what would be in the best interests of the chil-

dren involved. Such an evaluation should be objective in nature and include all parties involved, including Mr. P., C.L.-P., the three P. children, and the J. children.

Dr. Krieg's report states that the masturbation incident took place in front of a fifteen-year-old female. The report is totally devoid of any mention of the ten-year-old girl. Mark P. apparently was less than truthful with the psychologist when relating his past deviant sexual behaviors.

Mr. J. attempted to rebut these opinions by offering the testimony of Dr. Sheila Deitz. Ms. J. filed a motion to exclude the testimony due to late identification of the expert. The motion was granted and the testimony was excluded. As a result, the expert testimony received and considered by the family law master was one-sided. Consequently, our review on appeal is limited to consideration of these unilateral opinions. We caution against this practice. We believe the better practice would be to permit each side to present his or her expert witnesses when issues, such as the one presented here, are critically important to the final outcome of the case.

Custodial responsibility is discussed in W.Va.Code § 48-9-206 (2001), which states in pertinent part:

> (a) Unless otherwise resolved by agreement of the parents under section 9-201 or unless manifestly harmful to the child, the court shall allocate custodial responsibility so that the proportion of custodial time the child spends with each parent approximates the proportion of time each parent spent performing caretaking functions for the child prior to the parents' separation[.]

We believe the trial judge did not err in finding that it would be "manifestly harmful"

to these children to live in a household where Mark P. is constantly present.[4]

 This Court previously said,

> To be considered fit, the primary caretaker parent must: (1) feed and clothe the child appropriately; (2) adequately supervise the child and protect him or her from harm; (3) provide habitable housing; (4) avoid extreme discipline, child abuse, and other similar vices; and (5) refrain from immoral behavior under circumstances that would affect the child. In this last regard, restrained normal sexual behavior does not make a parent unfit.

Syllabus Point 5, *David M. v. Margaret M.*, 182 W.Va. 57, 385 S.E.2d 912 (1989). We do not believe that under the circumstances presented here, Ms. J. can protect the children from harm. She simply believes no harm exists. She demonstrated as much during the time the temporary custody order was in place by allowing Mark P. to have contact with the children in violation of the order. Clearly, it is in the best interests of these children to remain in the custody of their father.

For the foregoing reasons, we cannot say that the circuit court abused its discretion by granting permanent custody of the children to Mr. J. The order of the Circuit Court of Wood County is affirmed.

Affirmed.

Justice MAYNARD concurs and reserves the right to file a concurring opinion.

Justice ALBRIGHT dissents and reserves the right to file a dissenting opinion.

---

4. The case of *DiMagno v. DiMagno*, 192 W.Va. 313, 452 S.E.2d 404 (1994) (per curiam), is distinguishable. In *DiMagno*, Mrs. DiMagno's boyfriend, T.A.P., exposed himself to his fifteen-year-old babysitter and pleaded no contest to a charge of disorderly conduct. The circuit court considered Mrs. DiMagno to be unfit because of her involvement with T.A.P. and because of accusations of excessive discipline. The court granted Mr. DiMagno custody of the parties' daughter. On appeal, this Court reversed the custody deter-

mination. The facts before us now are dissimilar. In *DiMagno*, we were not faced with the lengthy history of multiple sexual deviant behaviors exhibited by Mark P.; Mrs. DiMagno testified that she did not live with T.A.P.; and T.A.P. was granted unrestricted visitation with his children. Even under the *DiMagno* facts, this Court affirmed the part of the circuit court order which permitted no unsupervised visitation between T.A.P. and the DiMagnos' daughter.