IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2014 Term

_____

No. 13-0004

_____

**FILED**

**March 6, 2014**

released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

IN RE: I.T.

_____

Appeal from the Circuit Court of Raleigh County
The Honorable John A. Hutchison, Judge
Civil Action No. 10-CIGR-2-H

AFFIRMED

_____

Submitted: February 19, 2014
Filed: March 6, 2014

Jason R. Grubb, Esq.
Beaver, West Virginia
Counsel for Petitioner

Amber R. Easter, Esq.
Hayden & Hart, PLLC
Beckley, West Virginia
Counsel for Respondent

J. Mingo Winters, Esq.
Beckley, West Virginia
Guardian Ad Litem

The Opinion of the Court was delivered PER CURIAM.

SYLLABUS

"'"The exercise of discretion by a trial court in awarding custody of a minor child will not be disturbed on appeal unless that discretion has been abused; however, where the trial court's ruling does not reflect a discretionary decision but is based upon an erroneous application of the law and is clearly wrong, the ruling will be reversed on appeal." Syllabus point 2, *Funkhouser v. Funkhouser*, 158 W.Va. 964, 216 S.E.2d 570 (1975), *superseded by statute on other grounds as stated in David M. v. Margaret M.*, 182 W.Va. 57, 385 S.E.2d 912 (1989).' Syl. Pt. 1, *In re Abbigail Faye B.*, 222 W.Va. 466, 665 S.E.2d 300 (2008)." Syllabus Point 2, *In re Antonio R.A.*, 228 W.Va. 380, 719 S.E.2d 850 (2011).

Per Curiam:

Petitioner Lesa M. ("Petitioner Grandmother") filed a petition with the Circuit Court of Raleigh County requesting that she be appointed guardian of her biological grandchild, I.T.[1] The circuit court denied this petition by order entered on December 3, 2012, finding that Petitioner Grandmother failed to present any evidence that Respondent Vanessa B. ("Respondent Mother") was an unfit mother. Further, the circuit court determined that "there has been no finding of abuse or neglect by the Respondent Mother upon the infant child[.]" The circuit court's ruling was consistent with the testimony of a Child Protective Services ("CPS") worker who stated that Respondent Mother was a fit and proper parent, and with the recommendation of I.T.'s guardian ad litem ("GAL"), who concluded that Respondent Mother should have custody of the child.

On appeal, Petitioner Grandmother raises two assignments of error: (1) the circuit court erred by failing to recognize that Petitioner Grandmother was the

---

[1] We adhere to our usual practice in cases involving sensitive facts and do not refer to the parties using their full names. *See In re Clifford K.*, 217 W.Va. 625, 619 S.E.2d 138 (2005). We also note that there is a distinction between the parties' biological and legal relationships. As the circuit court's order states, Petitioner is the biological grandmother and "legal aunt of the infant child." Petitioner Grandmother is also the biological mother and legal sister of Respondent Mother. Respondent Mother was adopted by her maternal grandparents when she was ten months old. Therefore, Petitioner Grandmother is legally Respondent Mother's sister and I.T.'s aunt. For ease of the reader, we will refer to Petitioner using her biological relationship to I.T., "grandmother."

1

psychological parent of I.T.; and (2) the circuit court erred by issuing its ruling prior to receiving the report of the GAL and prior to receiving the results of a paternity test.

After thorough review, we affirm the circuit court's December 3, 2012, order.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

I.T. was born on May 13, 2009. Approximately one month later, Respondent Mother and I.T. moved into Petitioner Grandmother's residence. Respondent Mother moved out of Petitioner Grandmother's residence five months later, leaving I.T. in Petitioner Grandmother's care. Respondent Mother testified that she and Petitioner Grandmother agreed that I.T. would remain in Petitioner Grandmother's care temporarily while Respondent Mother got settled in her new apartment. Petitioner Grandmother subsequently refused to return custody of I.T. to Respondent Mother[2] and filed a "Petition For Appointment of Guardian" in the Family Court of Raleigh County on

---

[2] Respondent Mother stated that she attempted to have Petitioner Grandmother return I.T. to her custody. Because these attempts were unsuccessful, Respondent Mother contacted the Raleigh County Police Department for assistance. After Respondent Mother contacted the police department, Petitioner Grandmother filed a domestic violence petition against Respondent Mother, alleging she had substance abuse issues that would create an unsafe environment for I.T.

November 30, 2010.  This petition alleged that Respondent Mother "lived a lifestyle centered around a culture of substance abuse and did not maintain a stable residence[.]"

On December 7, 2010, the family court entered an "Emergency Temporary Order" granting temporary custody of I.T. to Petitioner Grandmother, and ordering that Respondent Mother receive weekly visitation with the child.  Further, the family court's order stated that "due to the history of this matter including domestic violence petitions, this matter shall be overlapped and referred to the Raleigh County Circuit Court."[3]

Following a number of delays, the circuit court held hearings on Petitioner Grandmother's guardianship petition on July 13, 2012, and on July 25, 2012.[4]  These

---

[3] The family court order removing the guardianship petition to circuit court incorrectly cites "Rule 47a" of the *Rules of Practice and Procedure for Family Court* as its basis for removal, rather than Rule 48a(a). In fact, Rule 47(a) provides for the appointment of guardians ad litem in family court cases, while Rule 48a(a) establishes the basis for removing a guardianship petition to circuit court.

[4] Based on the record before us, it is unclear why a hearing was not held within ten days once the family court transferred this case to the circuit court.  Rule 48a(a) of the *Rules of Practice and Procedure for Family Court* states

> (a) *Removal by family court to circuit court of infant guardianship cases involving child abuse and neglect.*—If a family court learns that the basis, in whole or part, of a petition for infant guardianship brought pursuant to W. Va.Code § 44–10–3, is an allegation of child abuse and neglect as defined in W. Va.Code § 49–1–3, then the family court before whom the guardianship proceeding is pending shall remove the case to the circuit court for hearing. Should the family court learn of such allegations of child abuse and neglect during the hearing, then the family court shall

(continued . . .)

continue the hearing, subject to an appropriate temporary guardianship order, **and remove the case to the circuit court for hearing to be conducted within 10 days**, for determination of all issues. At the circuit court hearing, allegations of child abuse and neglect must be proven by clear and convincing evidence. Immediately upon removal, the circuit clerk shall forthwith send the removal notice to the circuit court. Upon receipt of the removal notice, the circuit court shall forthwith cause notice to be served in accordance with W. Va.Code § 44–10–3 and to the Department of Health and Human Resources who shall be served with notice of the petition, including a copy of the petition, and of the final hearing to be conducted before the circuit court. Such notice to the Department of Health and Human Resources shall constitute a report by the family and circuit courts pursuant to W. Va.Code § 49–6A–2.

(Emphasis added).

The parties have not raised the failure to hold a hearing within ten days as error or asked for any relief due to this failure. We emphasize, however, that circuit courts must comply with the requirement to have a hearing within ten days when a family court transfers a case to circuit court pursuant to Rule 48a of the *Rules of Practice and Procedure for Family Court*. This ten day requirement is a mandatory provision that a circuit court may not ignore due to unjustified procedural delays. This Court has consistently recognized child abuse and neglect cases as high priority. *See* Syllabus Point 1, in part, *In re Carlita B.*, 185 W.Va. 613, 408 S.E.2d 365, (1991) ("Child abuse and neglect cases must be recognized as being among the highest priority for the courts' attention. Unjustified procedural delays wreak havoc on a child's development, stability and security.").

4

hearings included testimony from Respondent Mother, Petitioner Grandmother and a CPS worker.

Respondent Mother, addressing the issue of stability, testified that she has been employed at the same job for three years and has lived in the same residence for two years. While she acknowledged past marijuana use, she stated that she was no longer using marijuana and had passed all of her recent drug screens. Additionally, Respondent Mother stated that she has an infant child that she is raising with her boyfriend, and that she lives with this child and her boyfriend in a three bedroom apartment. Respondent Mother acknowledged that she and her boyfriend had experienced problems in the past which prompted her to file two domestic violence petitions against him that she eventually dropped. Respondent Mother testified that her current relationship with her boyfriend was positive and that "we both agreed that if we are having a disagreement, we will both walk out of the room . . . we've come to the understanding that that's not the way you do – that's not the way you handle things."

Lora Bailey, a CPS worker, testified at the July 25, 2012, hearing. The circuit court's order described her testimony as follows:

> [I]n 2010 she investigated allegations that Respondent Mother was abusing her children, and concluded that the allegations of abuse were not substantiated. She also testified that she met with the Respondent Mother and her boyfriend, at their home a few days prior to the July 25, 2012, hearing and that the home was clean and organized, and both parties were friendly, coherent and cooperative.

5

Further, Ms. Bailey testified that Respondent Mother is a fit and proper parent and that "CPS had no reason to say she (I.T.) should not be" returned to Respondent Mother's custody.

Petitioner Grandmother also testified before the circuit court. She stated that "my daughter [Respondent Mother], I know she's stable now. I can tell just by looking at her." While Petitioner Grandmother no longer had concerns about Respondent Mother's stability, she stated that she was concerned about Respondent Mother's boyfriend, and did not want I.T. to be raised in an abusive environment.

The circuit court appointed a guardian ad litem, J. Mingo Winters, for I.T. on September 10, 2012. The GAL conducted an investigation which included interviews with Petitioner Grandmother and Respondent Mother, as well as home studies of both residences. Following this investigation, the GAL concluded that "the guardianship requested by Lesa M. [Petitioner Grandmother] should be denied and permanent custody of the minor child should be returned to the child's biological mother [Respondent Mother]."

The circuit court entered an order on December 3, 2012, denying Petitioner Grandmother's guardianship petition. The court's order explains that:

> The Court finds that the Petitioner has presented no evidence that supports the assertion that the Respondent Mother is an unfit person to care for the child because of misconduct, neglect, immorality, abandonment or other dereliction of duty. Further, the Petitioner does not allege that the Respondent Mother has waived her right to custody of the child, or has transferred, relinquished or surrendered such custody.

> The Court finds that there has been no finding of abuse or neglect by the Respondent Mother upon the infant child, and there is no evidence that granting the Respondent Mother custody of the child would place the child in imminent danger of harm, or would in any way compromise the child's welfare.

The circuit court concluded that "the best interests of the infant child require that the child be immediately returned to the care and custody of the Respondent Mother, and that the Petitioner's Petition for Appointment of Guardian be denied." Following entry of the circuit court's order denying her petition for guardianship, Petitioner Grandmother filed the present appeal.

## II.

## STANDARD OF REVIEW

This Court has held that with regard to custody decisions, including guardianships:

> "'The exercise of discretion by a trial court in awarding custody of a minor child will not be disturbed on appeal unless that discretion has been abused; however, where the trial court's ruling does not reflect a discretionary decision but is based upon an erroneous application of the law and is clearly wrong, the ruling will be reversed on appeal.' Syllabus point 2, *Funkhouser v. Funkhouser*, 158 W.Va. 964, 216 S.E.2d 570 (1975), *superseded by statute on other grounds as stated in David M. v. Margaret M*., 182 W.Va. 57, 385 S.E.2d 912 (1989)." Syl. Pt. 1, *In re Abbigail Faye B*., 222 W.Va. 466, 665 S.E.2d 300 (2008).

7

Syllabus Point 2, *In re Antonio R.A.*, 228 W.Va. 380, 719 S.E.2d 850 (2011).  With this standard in mind, we examine the parties' arguments.

## III.

## ANALYSIS

Petitioner Grandmother raises two assignments of error: (1) the circuit court erred by failing to recognize that Petitioner Grandmother was the psychological parent of I.T.; and (2) the circuit court erred by issuing its ruling prior to receiving the report of the GAL and prior to receiving the results of a paternity test.

This Court has repeatedly held that "[i]n a contest involving the custody of an infant the welfare of the child is the polar star by which the discretion of the court will be guided." Syllabus Point 1, *State ex rel. Cash v. Lively*, 155 W.Va. 801, 187 S.E.2d 601 (1972) (internal citation omitted). *See also* Syllabus Point 3, in part, *In re Katie S.*, 198 W.Va. 79, 479 S.E.2d 589 (1996) ("Although parents have substantial rights that must be protected, the primary goal . . . in all family law matters . . . must be the health and welfare of the children."); Syllabus Point 5, *Carter v. Carter*, 196 W.Va. 239, 470 S.E.2d 193 (1996) ("In visitation as well as custody matters, we have traditionally held paramount the best interests of the child.").  With this background in mind, we proceed to consider Petitioner Grandmother's assignments of error.

8

## A. Psychological Parent

Petitioner Grandmother argues that the circuit court should have granted her petition for guardianship of I.T. because she is the child's psychological parent. Petitioner Grandmother did not raise the psychological parent argument before the circuit court. In fact, the circuit court's order denying the guardianship petition specifically noted that "[t]he Petitioner has not raised the argument that she has taken on the role of psychological parent to the infant child[.]"

The issue before the circuit court was whether Respondent Mother was a fit parent and whether it would be in I.T.'s best interest to be returned to the custody of Respondent Mother.[5] Petitioner Grandmother had the opportunity to raise the

---

[5] This Court has previously addressed a parent's right to the custody of his/her child:

> In the law concerning custody of minor children, no rule is more firmly established than that the right of a natural parent to the custody of his or her infant child is paramount to that of any other person; it is a fundamental personal liberty protected and guaranteed by the Due Process Clauses of the West Virginia and United States Constitutions.

Syllabus Point 1, *In re Willis*, 157 W.Va. 225, 207 S.E.2d 129 (1973). *Accord* Syllabus, *Whiteman v. Robinson*, 145 W.Va. 685, 116 S.E.2d 691 (1960) ("A parent has the natural right to the custody of his or her infant child, unless the parent is an unfit person because of misconduct, neglect, immorality, abandonment or other dereliction of duty, or has waived such right, or by agreement or otherwise has transferred, relinquished or surrendered such custody, the right of the parent to the custody of his or her infant child will be recognized and enforced by the courts.").

9

psychological parent issue before the circuit court and declined to do so. Because this issue was not raised in the circuit court, we conclude that it has been waived. "In the exercise of its appellate jurisdiction, this Court will not decide nonjurisdictional questions which were not considered and decided by the court from which the appeal has been taken." Syllabus Point 1, *Mowery v. Hitt*, 155 W.Va. 103, 181 S.E.2d 334 (1971).

### B. GAL Report and Paternity Test

Petitioner Grandmother's second assignment of error is that the circuit court erred by issuing its order denying her guardianship petition prior to receiving the report of the GAL and prior to receiving the results of a paternity test.

The GAL explained that his report was issued after the circuit court ruled on the guardianship petition because of a delay in receiving the results of a paternity test. Through this paternity test, the GAL sought to determine if Respondent Mother's boyfriend was I.T.'s father. After receiving the results of the test showing that her boyfriend was not the biological father, the GAL filed his report with the circuit court. The GAL's report agreed with the circuit court's ruling and concluded that "the guardianship requested by Lesa M. [Petitioner Grandmother] should be denied and permanent custody of the minor child should be returned to the child's biological mother [Respondent Mother]."

Petitioner Grandmother fails to cite any of the findings contained in the GAL's report. Similarly, Petitioner Grandmother does not state how the results of the

paternity test support her guardianship petition. Instead, Petitioner Grandmother's brief to this Court makes the general, conclusory argument that "the ruling on the guardianship proceeding without benefit of the paternity test results and guardian recommendations . . . was clearly erroneous." We disagree.

The GAL's report agreed with the circuit court's ruling. Assuming, arguendo, that it was error for the circuit court to issue its ruling without the benefit of the GAL report or the results of the paternity test, this error was harmless because the GAL recommended that the guardianship petition be denied. We conclude that Petitioner Grandmother did not suffer any prejudice as a result of the circuit court issuing its ruling prior to receiving the GAL's report or the results of the paternity test.

## IV.

## CONCLUSION

Based on all of the foregoing, we find that the circuit court did not abuse its discretion by denying Petitioner Grandmother's guardianship position. The circuit court's ruling is supported by the testimony of Respondent Mother, by CPS worker, Lora Bailey, who testified that Respondent Mother is a fit and proper parent, and by the GAL's report recommending that I.T. be placed in Respondent Mother's custody.

The circuit court's December 3, 2012, order denying the guardianship petition is affirmed.

Affirmed.

11