719 S.E.2d 850

In re ANTONIO R.A.

No. 101559.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 28, 2011.

Decided Nov. 23, 2011.

Linda Hausman, Esq., Kaufman & McPherson, PLLC, Bridgeport, WV, for Petitioner.

Amy L. Lanham, Esq., Delby B. Pool & Associates, Clarksburg, WV, Guardian ad Litem.

Steven B. Nanners, Esq., Nanners & Willett, L.C., Buckhannon, WV, for Respondent Gina H.

Jorge A., Pro Se, Respondent.

WORKMAN, C.J.:

This case calls upon the Court to interpret West Virginia law governing the appointment of guardians for minors. Specifically, this case involves a minor above the age of fourteen who has nominated a third party, his grandmother, to be his guardian. The guardianship is contested by the minor's non-offending, biological mother. The grandmother contends that West Virginia Code § 44–10–4 (2010) and the case law interpreting it require courts to appoint any guardian nominated by a minor above the age of fourteen, unless the guardian is "unfit." The Circuit Court of Harrison County, West Virginia, refused to interpret the statute in such a manner, however, holding instead that appointing a third party as a guardian for a minor over the objection of a non-offending, biological parent would violate that parent's constitutional right to the custody of his or her own child. Because the petitioners' interpretation of the relevant law is misguided, and because the circuit court did not abuse its discretion in this matter, the ruling below is affirmed.

## I. FACTS AND PROCEDURAL HISTORY

The child at issue in this case, Antonio R. A.,[1] was born on February 22, 1994. For most of his childhood, from age three until approximately age thirteen, Antonio resided with his maternal grandmother, Carol G., in Harrison County, West Virginia. His father, Jorge A., currently resides out-of-state. Antonio visits his father regularly but has never resided with him. Antonio's mother, Gina H., currently resides in Upshur County, West Virginia, with her husband, Sidney H., and Antonio's two half-siblings born to a prior marriage of Gina H. to Barry B.

In the summer of 2006, when Antonio was approximately thirteen years old, Gina H. brought him to live with her, Sidney H., and Antonio's two half-siblings in Upshur County. This living arrangement lasted approximately three years, until October 25, 2009, when Antonio's former step-father, Barry B., obtained an emergency domestic violence protective order on behalf of Antonio and his half-siblings, removing them from Gina and Sidney H.'s home. At that time, Antonio returned to Carol G.'s home and expressed a desire to have Carol G. become his permanent legal guardian.

On October 29, 2009, Carol G. filed a "Petition for Permanent Guardianship and Emergency Temporary Guardianship" in the Family Court of Harrison County, West Virginia. In that petition, she argued that, pursuant to West Virginia Code § 44–10–4 and Rule 6 of the West Virginia Rules of Practice and Procedure for Minor Guardianship Proceedings, Antonio should be permitted to nominate his own guardian as he is over the age of fourteen. She asserted that she would be a "fit" guardian, as required by statute, and indicated that Antonio's father, Jorge A., intended to waive his priority right to appointment under West Virginia Code § 44–10–3 (2010). Carol G. additionally filed a document entitled "Nomination of Guardian," signed by

Antonio and notarized, in which Antonio "nominates and requests" that Carol G. be appointed as his guardian.

On November 16, 2009, the family court ordered that Antonio remain in Carol G.'s care temporarily, until the petition for guardianship could be resolved. On December 9, 2009, Carol G. filed an amended petition for guardianship including allegations of abuse and neglect against Gina and Sidney H.[2]

In the meantime, as a result of the allegations forming the basis for the emergency protective order, the West Virginia Department of Health and Human Resources, Division of Child Protective Services, conducted an investigation into the alleged abuse and neglect of all three of Gina H.'s children. In a report submitted to the family court on November 30, 2009, Alison Daugherty, a Child Protective Services worker, concluded that the allegations did not rise to the level of abuse or neglect. She recommended that all three children be returned to the custody of Gina and Sidney H. and that the family participate in family counseling and other family support services.

In late December, the family court appointed Amy Lanham as Guardian ad Litem for Antonio. On January 29, 2010, Ms. Lanham submitted a report, recommending that Carol G. be appointed as Antonio's guardian, and that Antonio and his mother, Gina H., participate in family counseling. Ms. Lanham asserted that Carol G. would be a "fit" guardian as required by West Virginia Code §§ 44–10–3 & –4.

Following briefing by all parties, the family court, on April 29, 2010, entered an order denying Carol G.'s petition for permanent guardianship. As a basis for its ruling, the family court stated that "this court is not convinced that West Virginia Code § 44–10–4 applies to the granting of guardianship to a third party when the child's parents are alive and fit." The family court concluded that "to claim that a teenager may nominate any

---

1. "As in all sensitive matters involving the rights of children, we use only initials in reference to the last names of the individuals involved." *Visitation of Cathy L.(R.)M. v. Mark Brent R.*, 217 W.Va. 319, 321 n. 1, 617 S.E.2d 866, 868 n. 1 (2005).

2. In the amended guardianship petition, Carol G. alleged that Gina H. had failed to seek certain types of medical care for Antonio and that Sidney H. had engaged in physically aggressive discipline.

person to be his guardian, against his fit parents' wishes, is not only unsupported by the law but it is also unsupported by good sense." The family court then ordered that Antonio be returned to Gina H. following the conclusion of the school year.

Carol G. and Ms. Lanham (hereinafter "the petitioners") filed a joint petition for appeal to the circuit court. On July 8, 2010, the circuit court entered a lengthy order denying the petition for appeal. The circuit court cited *In re Abbigail Faye B.*, 222 W.Va. 466, 665 S.E.2d 300 (2008), for the proposition that "fit" parents have a right to the custody of their own children. The circuit court recognized that Carol G. "has provided a loving and nurturing home for much of Antonio's life," but concluded that there is "no basis in law for a child, of any age, to take away his or her own fit parent's right to custody and nominate a third-party guardian...." Thus, it affirmed the family court's order.

The petitioners now ask this Court to reverse the circuit court's order. In addition to briefs filed by the petitioners and the respondent, Gina H., a letter has been filed pro se by Antonio's father, Jorge A., who is also named as a respondent in this case. In that letter, Jorge A. indicates that he supports Antonio's efforts to have Carol G. appointed as his permanent guardian.

## II. STANDARD OF REVIEW

 This Court's standard of review for appeals arising from family court decisions is as follows:

In reviewing a final order entered by a circuit court judge upon a review of, or upon a refusal to review, a final order of a family court judge, we review the findings of fact made by the family court judge under the clearly erroneous standard, and

the application of law to the facts under an abuse of discretion standard. We review questions of law de novo.

Syllabus, *Carr v. Hancock*, 216 W.Va. 474, 607 S.E.2d 803 (2004). With regard to custody decisions, including petitions for guardianship, this Court has held:

The exercise of discretion by a trial court in awarding custody of a minor child will not be disturbed on appeal unless that discretion has been abused; however, where the trial court's ruling does not reflect a discretionary decision but is based upon an erroneous application of the law and is clearly wrong, the ruling will be reversed on appeal.

*Abbigail Faye B.*, 222 W.Va. 466, 665 S.E.2d 300, Syl. Pt. 1 (quoting Syl. Pt. 2, *Funkhouser v. Funkhouser*, 158 W.Va. 964, 216 S.E.2d 570 (1975), *superseded by statute on other grounds as stated in David M. v. Margaret M.*, 182 W.Va. 57, 385 S.E.2d 912 (1989)).

Here, the circuit court affirmed the family court's denial of Carol G.'s guardianship petition on the basis that courts are not permitted to appoint a permanent guardian for a minor child when doing so would effectively divest a non-offending, biological parent of their right to custody. Pursuant to the standards set forth above, this Court will review the lower courts' interpretation of the relevant statutes and case law de novo, but will review the ultimate decision to deny the guardianship petition and return custody of Antonio to Gina H. for abuse of discretion.

## III. DISCUSSION

### A. Guardianship Statutes

 The statutes governing guardianship appointments are found at West Virginia Code §§ 44–10–3 & 4.[3] West Virginia Code § 44–10–3, provides, in relevant part,

---

**3.** These guardianship statutes are contained within Chapter 44 of the West Virginia Code, which pertains to the "Administration of Estates and Trusts," Article 10, which governs "Guardians and Wards Generally." This Court has previously recognized that these sections of the Code apply to situations involving custodial guardianship appointments for minor children. *See, e.g., Abbigail Faye B.*, 222 W.Va. at 473 n. 11, 665 S.E.2d at 307 n. 11 ("The statutory provisions

relating to guardians and wards generally, W. Va.Code § 44–10–1, *et seq.*, have frequently been relied upon by this Court when making custodial determinations."). Moreover, the West Virginia Rules of Practice and Procedure for Minor Guardianship Proceedings specifically provide that these Code sections apply to guardianships of either "the person or estate of a minor, or both." *Id.* at Rule 2(a).

The circuit court or family court of the county in which the minor resides, or if the minor is a nonresident of the state, the county in which the minor has an estate, may appoint as the minor's guardian a suitable person. The father or mother shall receive priority. However, in every case, the competency and fitness of the proposed guardian and the welfare and best interests of the minor shall be given precedence by the court when appointing the guardian.

*Id.* at § 44–10–3(a). Thus, West Virginia Code § 44–10–3 provides courts with authority to appoint a "suitable person" as a minor's guardian. *Id.* As this Court has previously acknowledged, however, "[t]he statute does not describe the types of situations in which such appointments are appropriate...." *Richard P.*, 227 W.Va. at 291, 708 S.E.2d at 485.

West Virginia Code § 44–10–4, entitled "Right of minor to nominate guardian," provides:

(a) *If the minor is above the age of fourteen years, he or she may* in the presence of the circuit or family court, or in writing acknowledged before any officer authorized to take the acknowledgment of a deed, *nominate his or her own guardian, who, if approved by the court, shall be appointed accordingly.*

(b) If the guardian nominated by the minor is not appointed by the court, or if the minor resides outside the state, or if, after being summoned, the minor neglects to nominate a suitable person, the court may appoint the guardian in the same manner as if the minor were under the age of fourteen years.

*Id.* (emphasis added). This statute, therefore, extends to children fourteen years or older the right to nominate their own guardians. Like West Virginia Code § 44–10–3, however, nothing in this statute describes the circumstances under which such a nomination may be made.

The petitioners argue that under the plain language of these statutes and the cases interpreting them, Antonio is entitled to nominate Carol G. as his guardian and this Court must accept such nomination. In support of this position, the petitioners rely on several cases which have interpreted West Virginia Code § 44–10–4 as *requiring* a court to appoint a guardian who has been nominated by a minor above the age of fourteen unless the court finds the proposed guardian to be "unfit."

In syllabus point seven of *Garska v. McCoy*, 167 W.Va. 59, 278 S.E.2d 357 (1981), a case involving a custody dispute between two biological parents, this Court interpreted West Virginia Code § 44–10–4 as giving a minor over the age of fourteen "an absolute right" to nominate his or her own guardian. The Court in *Garska*, however, was merely considering the language contained in West Virginia Code § 44–10–4 in order to determine the meaning of the phrase "a child of tender years," a concept sometimes considered in making custody determinations for young children. *Id.* To that end, the Court stated that "[t]he concept of a 'child of tender years' is somewhat elastic; obviously an infant in the suckling stage is of tender years, while an adolescent fourteen years of age or older is not, as he has an absolute right under W. Va.Code, 44–10–4 (1923) to nominate his own guardian...." *Id.* at Syl. Pt. 7, in part.

A year after *Garska* was issued, the Court clarified that while a child over the age of fourteen may have an absolute right to *nomi-*

Although these statutes have long been utilized by the courts of this State to appoint guardians for minors in custodial matters, it is clear that these statutes were originally drafted, more than one hundred years ago, with an eye towards the administration of trusts and estates. The statutes simply do not adequately address guardianship issues in modern-day, custodial matters. This Court has previously recognized these inadequacies and urged the Legislature to address these statutes. *See In re Richard P.*, 227 W.Va. 285, 294–95, 708 S.E.2d 479, 488 (2010) (Davis, C.J.,

concurring) ("I feel compelled to write separately to reiterate my concerns regarding the inadequacy of the guardianship statutes currently in place that fail to consider the unique circumstances of modern-day families...."). Having had to apply these statutes yet again in a matter that they are not fully adequate to address, we again urge the Legislature to examine the need for a statutory framework for resolving guardianship issues relating to custody, as opposed to guardianships in the context of fiduciary responsibilities to minors.

*nate* his or her own guardian, a court is not bound to *appoint* such guardian. *S.H. v. R.L.H.*, 169 W.Va. 550, 289 S.E.2d 186 (1982). Notably, in *S.H.*, the Court considered the language of this statute in the context of a custody dispute between *two biological parents*, rather than a biological parent and a third party. The Court explained that

> [t]he use of the word "nominate" in *Code*, 44–10–4 [1923] means that *unless the court finds the nominee unfit to serve as guardian, the nominee should be confirmed by the court* .... Certainly the court is not required to confirm a child's nomination of an "unfit" parent as his guardian, and when a child nominates an unfit parent as his guardian it is the obligation of the court to award the custody to the other parent.

169 W.Va. at 555, 289 S.E.2d at 189–90 (emphasis added). It therefore held that

> [t]he word "nominate" as used in syl. pt. 7 of *Garska v. McCoy*, [167] W.Va. [59], 278 S.E.2d 357 (1981) means that a child has a right to suggest a guardian to the court, and that the court is obliged to confirm the nomination of that particular guardian unless the court specifically finds such guardian to be unfit to serve in such capacity under the general rules governing unfitness outlined in *Garska v. McCoy, supra.*

*Id.* at Syl. Pt. 2.

The petitioners in the instant case have understandably seized upon the language in *Garska* and *S.H.* to argue that the Court is *obligated* to appoint Carol G. as Antonio's guardian, given that Antonio is above the age of fourteen and there is no evidence that Carol G. would be an "unfit" guardian. Having closely considered this issue, however, the Court finds that the petitioners' interpretation of West Virginia Code § 44–10–4, and their reliance on *S.H.*, is misguided.

■ This Court has long recognized that statutes that relate to the same subject matter must be read in consideration of one another.

> Statutes which relate to the same persons or things, or to the same class of persons or things, or statutes which have a

common purpose will be regarded in *pari materia* to assure recognition and implementation of the legislative intent. Accordingly, a court should not limit its consideration to any single part, provision, section, sentence, phrase or word, but rather review the act or statute in its entirety to ascertain legislative intent properly.

Syl. Pt. 5, *Fruehauf Corp. v. Huntington Moving & Storage Co.*, 159 W.Va. 14, 217 S.E.2d 907 (1975). Here, West Virginia Code §§ 44–10–3 and –4 are statutes which clearly relate to the same subject matter, i.e., the appointment of guardians for minor children. Thus, the two statutes must "be regarded in *pari materia* to assure recognition and implementation of the legislative intent." *Fruehauf Corp.*, 159 W.Va. 14, 217 S.E.2d 907, Syl. Pt. 5.

West Virginia Code § 44–10–3 grants authority to family and circuit courts to appoint guardians for minors and gives courts discretion in determining when such appointments are necessary and who to appoint as a guardian in an individual case. The plain language of the statute provides that a "circuit court or family court ... *may* appoint as the minor's guardian a suitable person." *Id.* at § 44–10–3(a) (emphasis added). We reiterated the discretionary nature of the language of this statute in *Abbigail Faye B.*, holding:

> Pursuant to the plain language of W. Va.Code § 44–10–3(a) (2006) (Supp.2007), the circuit court or family court of the county in which a minor resides may appoint a suitable person to serve as the minor's guardian. In appointing a guardian, the court shall give priority to the minor's mother or father. "However, in every case, the competency and fitness of the proposed guardian and the welfare and best interests of the minor shall be given precedence by the court when appointing the guardian." W. Va.Code § 44–10–3(a).

*Abbigail Faye B.*, 222 W.Va. 466, 665 S.E.2d 300, Syl. Pt. 6. More specifically, this Court has explained that, under well-settled principles of statutory construction, "[b]y stating that family and circuit courts *may*, rather than must, appoint a suitable person as a guardian for a minor, the Legislature grant-

ed family and circuit courts discretion in determining when the appointment of a guardian is appropriate." *Richard P.*, 227 W.Va. at 292, 708 S.E.2d at 486.

█ West Virginia Code § 44–10–4, on the other hand, merely clarifies that, when the minor for whom a guardian is to be appointed is above the age of fourteen, such minor is entitled to have a say in who the court appoints. *See S.H.*, 169 W.Va. 550, 289 S.E.2d 186, Syl. Pt. 2. This statute does not independently authorize courts to appoint guardians for minors, nor does it alter the discretion afforded to courts in West Virginia Code § 44–10–3 to determine when a guardianship appointment for a minor is appropriate. Rather, West Virginia Code § 44–10–4 simply reduces a court's discretion in choosing the person to appoint as guardian when the minor is above the age of fourteen. The statute does not, as the petitioners contend, require courts to appoint any guardian nominated by a minor above the age of fourteen if such guardian is found to be "fit."

█ Thus, the Court now holds that a family or circuit court's authority to appoint a suitable person as a guardian for a minor, including a minor above the age of fourteen, is derived from West Virginia Code § 44–10–3 (2010), which grants courts discretion in determining when the appointment of a guardian for a minor is appropriate. West Virginia Code § 44–10–4 (2010), which entitles a minor above the age of fourteen to nominate his or her own guardian, applies only after a court has determined, pursuant to West Virginia Code § 44–10–3, that a particular circumstance warrants the appointment of a guardian. Accordingly, the circuit court properly concluded that it was not obligated under West Virginia Code § 44–10–4 to appoint Carol G. as Antonio's guardian, despite his age and Carol G.'s fitness.

### B. Parent's Constitutional Rights to Custody of Children

Because family and circuit courts have discretion in determining whether to appoint a

guardian for a minor, we must next consider whether the lower courts abused their discretion in denying the guardianship petition in this case. Specifically, the circuit court affirmed the family court's refusal to appoint Carol G. as Antonio's guardian, finding that "there is no basis in law for a child, of any age, to take away his or her own fit parent's right to custody and nominate a third-party guardian...."

█ A biological parent's right to the custody of his or her child is rooted in the due process clauses of both the West Virginia and the United States' Constitutions:

> In the law concerning custody of minor children, no rule is more firmly established than that the right of a natural parent to the custody of his or her infant child is paramount to that of any other person; it is a fundamental personal liberty protected and guaranteed by the Due Process Clauses of the West Virginia and United States Constitutions.

Syl. Pt. 1, *In re Willis*, 157 W.Va. 225, 207 S.E.2d 129 (1973).[4] Of course, a biological parent's constitutional right to the custody of his or her child is not unfettered. This Court has held that, in any case involving child custody, "[t]he controlling principle ... is the welfare of the child and ... in a contest involving the custody of an infant the welfare of the child is the polar star by which the discretion of the court will be guided." *State ex rel. Kiger v. Hancock*, 153 W.Va. 404, 405, 168 S.E.2d 798, 799 (1969). To this end, we have held that a parent's natural right to the custody of his or her child is limited in cases in which the parent is found to be abusive, neglectful or otherwise unfit:

> A parent has the natural right to the custody of his or her infant child and, unless the parent is an unfit person because of misconduct, neglect, immorality, abandonment or other dereliction of duty, or has waived such right, or by agreement or otherwise has transferred, relinquished

4. Although this Court has historically used the term "natural parent" when referring to a "biological parent," the terms are interchangeable in their legal meaning and the term "biological" more accurately describes the status of a parent who has contributed biologically to the conception and delivery of a child.

or surrendered such custody, the right of the parent to the custody of his or her infant child will be recognized and enforced by the courts.

Syllabus, *Whiteman v. Robinson*, 145 W.Va. 685, 116 S.E.2d 691 (1960).

Admittedly, striking a balance between a biological parent's constitutional rights and the child's best interests can be difficult. This Court specifically considered this delicate balance in *Honaker v. Burnside*, 182 W.Va. 448, 388 S.E.2d 322 (1989). In that case, a non-offending, "fit," biological father sought custody of his daughter. *Id.* at 450, 388 S.E.2d at 323–24. From an early age, the child had lived with her biological mother, step-father and half-sibling. *Id.* at 450, 388 S.E.2d at 323. Following the mother's tragic death, and pursuant to the mother's last will and testament, the child's step-father was appointed as her guardian. *Id.* at 450, 388 S.E.2d at 323–24. The biological father filed a petition arguing that "an unoffending natural parent should be entitled to custody of his or her child if such parent has not abandoned such child nor has in any manner been proven unfit." *Id.* at 450, 388 S.E.2d at 324. The circuit court agreed, granting custody to the biological father, despite the step-father's contention that the child's best interests would be served by allowing the child to continue to live with him and the child's half-sibling. *Id.* at 450–51, 388 S.E.2d at 324.

On appeal, this Court recognized that the child's best interest "is of immeasurable importance," but further acknowledged the right of a biological parent to raise his or her own child. *Id.* at 451, 388 S.E.2d at 324. It stated that

> [a]lthough the polar star concept is adhered to by this Court in child custody cases, we have "refused to apply it in cases where the parents have not abandoned the child or have in no manner been proved to be unfit to have the care and custody of such child." *Hammack v. Wise*, 158 W.Va. 343, 347, 211 S.E.2d 118, 121 (1975). This concept "will not be invoked to deprive an unoffending parent of his natural right to the custody of his child." *Hammack*, 158 W.Va. at 347, 211 S.E.2d at 121.

*Id.* Moreover, the Court recognized that " 'a strong presumption' " exists that " 'the welfare of the child is well protected when he is in the custody of an unoffending natural parent.' " *Id.* at 451, 388 S.E.2d at 324–25 (quoting *Hammack*, 158 W.Va. at 347, 211 S.E.2d at 121). Accordingly, the Court in *Honaker* affirmed the lower court's decision to return custody to the biological father, utilizing a lengthy transitional period.

In the instant case, Gina H. argues that, because the allegations of abuse and neglect were found to be unsubstantiated, she too is a non-offending, fit, biological parent, who has a constitutional right to the custody of her minor child. The petitioners, on the other hand, contend that the circuit court erred by focusing solely on Gina H.'s constitutional rights, without giving due consideration to Antonio's best interests. They argue that not only is the best interest analysis the polar star of all child custody proceedings, West Virginia Code § 44–10–3 specifically requires consideration of the child's best interests in guardianship cases.

In 2008, this Court squarely addressed the tension between a child's best interests and a biological parent's right to the custody of his or her child in the context of a guardianship petition filed by a third party. *Abbigail Faye B.*, 222 W.Va. 466, 665 S.E.2d 300. In that case, an infant, Abbigail, was born to a teenage mother, Autumn, who was still residing with her parents. *Id.* at 470, 665 S.E.2d at 304. The grandparents contributed significantly to Abbigail's care from her birth until her mother moved out, approximately six months later. *Id.* at 470–71, 665 S.E.2d at 304–05. When Autumn decided to move out and take Abbigail with her, the grandparents filed a petition for guardianship, alleging that Autumn had abandoned Abbigail at various times and that she was not properly caring for Abbigail's special needs. *Id.* at 471, 665 S.E.2d at 305.

Following an investigation, Child Protective Services determined that Abbigail was not an abused or neglected child and that Autumn had not abandoned her. *Id.* at 472, 665 S.E.2d at 306. The circuit court conducted a hearing on the petition for guardianship and concluded that the grandparents had

failed to prove that abuse or neglect had occurred or that Autumn was not a "fit" parent. *Id.* Thus, the circuit court denied the grandparent's petition for guardianship and returned custody of Abbigail to Autumn. *Id.*

On appeal, this Court found that West Virginia Code § 44–10–3 "permits a court to appoint a guardian for a minor child if the proposed guardian is competent and fit, but requires the court to accord priority to the child's mother or father." 222 W.Va. at 477, 665 S.E.2d at 311. The Court then noted that "[d]ivesting a child's biological parent of his/her guardianship, or custody, is a very serious matter. This Court repeatedly has recognized the inherent rights parents have to the custody of their own children, and any party seeking to interfere with such rights must bear a heavy burden." *Id.* at 478, 665 S.E.2d at 312 (footnote omitted).

 After reviewing and affirming the circuit court's findings that Abbigail had not been abused or neglected and that Autumn was a fit parent, this Court turned to the issue of the child's best interests. *Id.* at 478–79, 665 S.E.2d at 312–13. The Court explained that " '[a]lthough parents have substantial rights that must be protected, the primary goal ... in all family law matters ... must be the health and welfare of the children.' " *Id.* at 480, 665 S.E.2d at 314 (quoting Syl. Pt. 3, in part, *In re Katie S.,* 198 W.Va. 79, 479 S.E.2d 589 (1996)). The Court found, however, that "we typically have been reluctant to change a child's custodial placement unless such a change will materially promote the child's best interests." 222 W.Va. at 480, 665 S.E.2d at 314. In considering the facts of the case before it, the Court recognized that the grandparents could provide a "fine home" for Abbigail, and that they had been very involved in her care. *Id.* at 481, 665 S.E.2d at 315. Nevertheless, " '[w]hile courts always look to the best interests of the child in controversies concerning his or her custody, *such custody should not be denied to a parent merely because some other person might possibly furnish the child a better home or better care.'* " *Id.* at Syl. Pt. 12 (quoting Syl. pt. 3, *Hammack v. Wise,* 158

W.Va. 343, 211 S.E.2d 118 (1975)) (emphasis added). Thus, the Court concluded that:

> we agree with the circuit court's assessment that Abbigail's best interests require her to be placed with her parents, Autumn and Josh. Although Abbigail has bonded significantly with [the grandparents], she should also be afforded the opportunity to bond with her biological parents, Autumn and Josh. Simply because [the grandparents] have been in a position to provide substantial care for Abbigail, at times to the exclusion of Autumn and Josh, does not presumptively make them a better placement for Abbigail.... Absent evidence that Abbigail's safety would be endangered by awarding her guardianship to her parents, we cannot find any justification in the record to indicate that her welfare and best interests would not be served by placing her with her parents, Autumn and Josh, particularly in light of our prior findings that they are fit and competent to serve as her guardians and have, thus, been accorded a statutory preference pursuant to W. Va.Code § 44–10–3(a).

222 W.Va. at 481, 665 S.E.2d at 315.

As the circuit court noted, the facts of the instant case are very similar to those of *Abbigail Faye B.* and many of the same legal principles apply. A court may not divest Gina H., Antonio's biological mother, of her custodial rights simply because Carol G. would be a "fit" guardian. Undoubtedly, Carol G. has played a very important role in Antonio's life, but the fact that she "might possibly furnish the child a better home or better care," is not sufficient to divest Gina H. of her rights as Antonio's biological parent. *See id.* at Syl. Pt. 12. Moreover, because Antonio had been living with Gina H. for the three years prior to the filing of the guardianship petition, the lower courts were properly reluctant to change Antonio's custodial placement. *See id.* at 480, 665 S.E.2d at 314. Accordingly, the circuit court correctly concluded that Gina H.'s constitutional rights as Antonio's biological mother would be violated by appointing a third party as Antonio's guardian.

## C. Psychological Parent Analysis

 The petitioners do not dispute that Gina H. has certain rights as a biological parent. Nevertheless, they contend that the lower courts erred by failing to consider Carol G.'s role as Antonio's psychological parent.

A psychological parent is a person who, on a continuing day-to-day basis, through interaction, companionship, interplay, and mutuality, fulfills a child's psychological and physical needs for a parent and provides for the child's emotional and financial support. The psychological parent may be a biological, adoptive, or foster parent, or any other person. The resulting relationship between the psychological parent and the child must be of substantial, not temporary, duration and must have begun with the consent and encouragement of the child's legal parent or guardian. To the extent that this holding is inconsistent with our prior decision of In re Brandon L.E., 183 W.Va. 113, 394 S.E.2d 515 (1990), that case is expressly modified.

Syl. Pt. 3, In re Clifford K., 217 W.Va. 625, 619 S.E.2d 138 (2005). This Court has previously held that "[i]n exceptional cases and subject to the court's discretion, a psychological parent may intervene in a custody proceeding brought pursuant to W. Va.Code § 48-9-103 (2001) (Repl.Vol.2004) when such intervention is likely to serve the best interests of the child(ren) whose custody is under adjudication." Id. at Syl. Pt. 4.

Here, the petitioners contend that Carol G. is Antonio's psychological parent, as she is the person he lived with for over ten years of his life and is the person he would choose to live with now. Relying on a recent Memorandum Decision issued by this Court in In the Interest of Robert H., Slip. Op. 101469 (W.Va. filed April 1, 2011), the petitioners contend that, as Antonio's psychological parent, Carol G. should be appointed as his guardian.

In Robert H., a biological father appealed a circuit court's order granting guardianship of his son to the child's maternal great-aunt and great-uncle. Id. at 1. The child, Robert H., first went to live with his great-aunt and great-uncle after his mother lost custody due to drug problems. Id. Although his father, the petitioner, was granted custody at that time, the father made an arrangement with the great-aunt and great-uncle to care for Robert H., as the father was frequently away for long periods of time as a result of his employment as a long-haul truck driver. Id. After several years of this living arrangement, the great-aunt and great-uncle filed a petition for guardianship alleging that they were Robert H.'s psychological parents. Id. at 2. While the circuit court found the petitioner had not abandoned Robert H. or otherwise engaged in abuse or neglect, it found that Robert H. had bonded with the great-aunt and great-uncle, that he was thriving in their care, and that they were his psychological parents. Id. Thus, the circuit court appointed the great-aunt and great-uncle as Robert H.'s permanent guardians. Id.

On appeal, the father argued that, as the child's biological parent who has not been found to be abusive or neglectful, he is entitled to the custody of Robert H. Id. This Court, however, upheld the circuit court's ruling, finding that the father had "voluntarily transferred custody" of Robert H. to the great-aunt and great-uncle, thereby relinquishing his natural right to the custody of his child under Whiteman v. Robinson, 145 W.Va. 685, 116 S.E.2d 691, Syllabus ("A parent has the natural right to the custody of his or her infant child and, unless the parent . . . has transferred, relinquished or surrendered such custody, the right of the parent to the custody of his or her infant child will be recognized and enforced by the courts."). Slip. Op. 101469 at 3. After concluding that the great-aunt and great-uncle were, in fact, the child's psychological parents, the Court affirmed the appointment of the great-aunt and great-uncle as Robert H.'s guardians, noting that such arrangement was in the child's best interests. Id.

The petitioners in the instant case argue that, like the great-aunt and great-uncle in Robert H., Carol G. should be appointed as Antonio's guardian. Unlike the child in Robert H., however, Antonio had been living with his mother, Gina H., for the three years preceding the filing of the guardianship petition. While Carol G. might have been able to

succeed under this theory during the approximately ten years that Antonio lived with her, at this point in time, this Court cannot find that Gina H. has voluntarily transferred or relinquished custody of Antonio.

Nevertheless, the Court is sympathetic to Antonio's desire to have a continued relationship with his grandmother, who appears to have been his psychological parent for many years. While the lower courts did not err in denying Carol G.'s petition for guardianship, Antonio may be entitled to visitation with her. As previously discussed, this Court ruled in *Honaker v. Burnside* that the biological father of the child at issue was entitled to custody. 182 W.Va. at 451, 388 S.E.2d at 325. It further held, however, that the best interests of the child may, in certain cases, necessitate visitation with other parties: "[a]lthough custody of minor child should be with the natural parent absent proof of abandonment or some form of misconduct or neglect, the child may have a right to continued visitation rights with the stepparent or half-sibling." *Id.* at Syl. Pt. 2. Likewise, Antonio has a right to continued visitation with his grandmother, Carol G., who appears to have served as his psychological parent for much of his life. Moreover, Article 10 of Chapter 48 of the West Virginia Code sets forth specific procedures governing court ordered visitation for grandparents and grandchildren. Consequently, although Gina H. has properly been awarded custody of Antonio, several other legal avenues exist by which Carol G. may seek to protect her relationship with her grandson. The family court should schedule a hearing as soon as possible to establish a schedule for visitation between Antonio and Carol G.

As a final matter, representations made by the parties during oral argument indicate that Gina H. continues to have a strained relationship with her son, Antonio. Consequently, if given the opportunity, the family court should consider ordering further counseling for Antonio and Gina H. to aid them in establishing a better parent-child relationship.

## IV. CONCLUSION

For the reasons set forth herein, the lower courts did not abuse their discretion in denying Carol G.'s petition for guardianship; accordingly, the Court affirms the July 8, 2010, final order of the Circuit Court of Harrison County, West Virginia.

Affirmed with directions.

Justice BENJAMIN concurs and reserves the right to file a concurring opinion.

BENJAMIN, J., concurring:

I concur in the result of the majority opinion affirming the denial of the infant guardianship requested by Antonio R.A.'s grandparent. As the majority opinion duly explains, this was an appeal of the denial of an infant guardianship proceeding by the grandparent. This was not a petition for grandparent visitation. This Court affirmed these denials, but placed in its opinion certain directives requiring implementation of grandparent visitation by the family court. The majority opinion references the statutory procedure for the grandmother to request grandparent visitation with Antonio R.A., but circumvents that procedure by directing that "[t]he family should schedule a hearing as soon as possible to establish a schedule for visitation between Antonio and Carol G."

I am concerned that the granting of grandparent visitation by this Court without the procedural safeguards inherent in our statutory and case law is supplanting the important role of the family court in determining whether visitation is in the child's best interests. Therefore, while I agree with the affirmation of the lower court's denial of the guardianship, I disagree that this Court can order visitation without the benefit of a petition by the grandmother seeking this visitation and without adhering to the statutory guidelines for establishment thereof.