# IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

## January 2020 Term

_____

No. 18-0832

_____

TERRENCE E.,
Respondent Below, Petitioner

V.

CHRISTOPHER R. AND JULIE R.,
Petitioners Below, Respondents

_____

Appeal from the Circuit Court of Cabell County
The Honorable Christopher Chiles, Judge
Civil Action No. 17-CIG-1

REVERSED AND REMANDED

_____

Submitted: February 18, 2020
Filed: April 6, 2020

FILED
April 6, 2020
released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

Michael M. Cary
Charleston, West Virginia
Attorney for the Petitioner

Allison K. Huson
Huntington, West Virginia
Attorney for the Respondents

Krista Conway
Conway Law Office
Huntington, West Virginia
Guardian ad Litem

JUSTICE JENKINS delivered the Opinion of the Court.

**SYLLABUS BY THE COURT**

1. "'""The exercise of discretion by a trial court in awarding custody of a minor child will not be disturbed on appeal unless that discretion has been abused; however, where the trial court's ruling does not reflect a discretionary decision but is based upon an erroneous application of the law and is clearly wrong, the ruling will be reversed on appeal.' Syl. pt. 2, *Funkhouser v. Funkhouser*, 158 W. Va. 964, 216 S.E.2d 570 (1975), *superseded by statute on other grounds as stated in David M. v. Margaret M.*, 182 W. Va. 57, 385 S.E.2d 912 (1989)." Syl. Pt. 1, *In re Abbigail Faye B.*, 222 W. Va. 466, 665 S.E.2d 300 (2008)[, *superseded by statute on other grounds as stated in In re Antonio R.A.*, 228 W. Va. 380, 719 S.E.2d 850 (2011)].' Syl. Pt. 2, *In re Antonio R.A.*, 228 W. Va. 380, 719 S.E.2d 850 (2011)." Syllabus point 2, *In re Guardianship of A.C.*, 240 W. Va. 23, 807 S.E.2d 271 (2017).

2. "A family or circuit court's authority to appoint a suitable person as a guardian for a minor, including a minor above the age of fourteen, is derived from West Virginia Code § 44-10-3 (2010), which grants courts discretion in determining when the appointment of a guardian for a minor is appropriate[.]" Syllabus point 5, in part, *In re Antonio R.A.*, 228 W. Va. 380, 719 S.E.2d 850 (2011).

3. "A parent has the natural right to the custody of his or her infant child and, unless the parent is an unfit person because of misconduct, neglect, immorality, abandonment or other dereliction of duty, or has waived such right, or by agreement or otherwise has transferred, relinquished or surrendered such custody, the right of the parent to the custody of his or her infant child will be recognized and enforced by the courts." Syllabus, *Whiteman v. Robinson*, 145 W. Va. 685, 116 S.E.2d 691 (1960).

4. "While courts always look to the best interests of the child in controversies concerning his or her custody, such custody should not be denied to a parent merely because some other person might possibly furnish the child a better home or better care." Syllabus point 3, *Hammack v. Wise*, 158 W. Va. 343, 211 S.E.2d 118 (1975).

5. "Although parents have substantial rights that must be protected, the primary goal . . . in all family law matters . . . must be the health and welfare of the children." Syllabus point 3, in part, *In re Katie S.*, 198 W. Va. 79, 479 S.E.2d 589 (1996).

**Jenkins, Justice:**

The petitioner, Terrence E.[1] ("Father"), appeals from the August 21, 2018 order entered by the Circuit Court of Cabell County. The circuit court's order denied Father's request to terminate[2] the guardianship of the respondents, Christopher R. and Julie R. ("the Guardians"), maternal grandparents and current guardians of Father's child, K.E. In its ruling, the court determined that Father had not demonstrated a "material change of circumstances" as required by West Virginia Code section 44-10-3(j) (LexisNexis 2014) to support a termination of the current guardianship. On appeal to this Court, Father argues that he has satisfied the statutory criteria for the termination of his child's guardianship and that, as the child's biological father, he has a superior right to her custody as compared to the Guardians. Upon a review of the parties' arguments and briefs, the appendix record and its supplement, and the pertinent authorities, we conclude the circuit court erred by requiring Father to demonstrate a "material change of circumstances" in order to terminate the existing guardianship. Accordingly, we reverse the circuit court's ruling and remand this case to the circuit court to determine whether the current guardianship should continue or whether the child's custody should be returned to one or both of her parents.

---

[1] Given the sensitive facts involved in this case, we will refer to the adult parties by their first names and last initials and the minor subject to these guardianship proceedings by her initials only. *See* W. Va. R. App. P. 40(e) (restricting use of personal identifiers in cases involving children); *In re I.M.K.*, 240 W. Va. 679, 682 n.1, 815 S.E.2d 490, 493 n.1 (2018); *In re S.H.*, 237 W. Va. 626, 628 n.1, 789 S.E.2d 163, 165 n.1 (2016).

[2] See *infra* note 3 regarding the nature of the relief sought by Father.

1

# I.

## FACTS AND PROCEDURAL HISTORY

In 2017, Kathryn R. ("Mother") and Father were charged with child abuse and neglect of K.E. The petition primarily alleged that Mother, as a result of her substance abuse and addiction, had abused and/or neglected K.E. and that Father had failed to protect K.E. from Mother's substance abuse. Later, Father also was charged with failure to provide support because he was delinquent in his child support payments. Eventually, the circuit court found that both parents had corrected the conditions constituting abuse and/or neglect and returned custody of K.E. to Mother and Father. The court also entered a parenting order that gave primary custody of K.E. to Mother and visitation to Father, including two overnight weekend visitations per month.

The following month, November 2017, Mother was arrested; charged with a violation of the conditions of her release and possession with the intent to deliver heroin; and incarcerated. As a result of Mother's incarceration, Guardians, who are Mother's parents, filed a petition to be appointed guardians of the child. Father claims that he was not notified of Mother's arrest or of the guardianship petition until after the petition had been granted on an emergency basis and a temporary guardianship hearing had been scheduled. With counsel, Father appeared at the temporary guardianship hearing, objected to the Guardians' appointment as the child's guardian, and requested custody. Mother consented to the guardianship, and the circuit court entered a temporary order appointing the maternal grandparents as Guardians of K.E.

During a subsequent hearing in January 2018, Father, by counsel, again objected to the guardianship and requested custody of his child. Ultimately, Father agreed that, because the child was doing well in school and it would be disruptive to change her school during the middle of the school year, continuation of the guardianship through the end of the school year would be in the child's best interest. It was suggested, however, that the guardianship arrangement could be reexamined at the end of the school year. The circuit court entered an order on February 20, 2018, finding it to be in the child's best interests to grant the maternal grandparents' (Guardians') petition to be named as her guardians and to continue Father's visitation pursuant to the parenting order entered at the end of the abuse and neglect proceedings. Father did not appeal from this order.

In April 2018, Father filed a petition to modify[3] the Guardians' guardianship. Pursuant to West Virginia Code section 44-10-3(j),

> [f]or a petition to revoke or terminate a guardianship filed by a parent, the burden of proof is on the moving party to show by a preponderance of the evidence that there has been a material change of circumstances and that a revocation or termination is in the child's best interest.

To support his petition, Father stated:

---

[3] Because Father sought custody of his child and the statute governing guardianships addresses only the termination or revocation of a guardianship, and not the modification of a guardianship, we will treat Father's request as a petition to terminate the Guardians' guardianship. *See* W. Va. Code § 44-10-3(j) (LexisNexis 2014) (describing procedure for "a petition to revoke or terminate a guardianship filed by a parent").

A change in circumstances has occurred because [Father] has systematically shown this Court that he is a fit parent and can provide the proper care and stability for the minor child.

At the filing of this Petition, the biological mother is incarcerated and unable to provide adequate care for the minor child.

[Father] has no criminal history.[4]  Therefore, it is in the best interests of the minor child to be under the care, custody, and control of the biological father.

Furthermore, [Father] recently switched to day shift at his place of employment to accommodate the minor child's school schedule and to ensure he will be available when she is getting out of school.

(Footnote added).  The Guardians objected to Father's motion, and the circuit court held hearings on the matter.

By order entered August 21, 2018, the circuit court denied Father's motion to terminate the Guardians' guardianship and continued the child's placement in their care. The circuit court ruled as follows:

The Court **FINDS** that there has not been a substantial change of circumstances warranting any modification of the current guardianship[,] and the Petition for Modification shall be dismissed.  The Court further **FINDS** it is in the best interests of the minor child for the guardianship to remain.

---

[4] The parties differ as to whether this statement concerning Father's criminal history is factually accurate.  Because we are remanding this case to the circuit court for further proceedings, the veracity of this statement and its impact on Father's fitness to parent his child as well as on the child's best interests should be considered by the circuit court in rendering its ruling.

In summary, the circuit court ordered that "[t]he minor child shall remain in her current guardianship," but also ordered that K.E. "shall continue to have visitation [with Father] as in the prior order." From this order, Father appeals to this Court.

## II.

## STANDARD OF REVIEW

The sole issue presented by this appeal is whether the guardianship appointing the child's maternal grandparents as her Guardians should continue or whether Father is entitled to the custody of his child. Our review of the circuit court's ruling continuing the guardianship order is governed by the following standards of review. First, when reviewing decisions rendered by a circuit court, we are guided by our holding in Syllabus point 4 of *Burgess v. Porterfield*, 196 W. Va. 178, 469 S.E.2d 114 (1996): "This Court reviews the circuit court's final order and ultimate disposition under an abuse of discretion standard. We review challenges to findings of fact under a clearly erroneous standard; conclusions of law are reviewed *de novo*." *See also* Syl. pt. 1, *McCormick v. Allstate Ins. Co.*, 197 W. Va. 415, 475 S.E.2d 507 (1996) ("When this Court reviews challenges to the findings and conclusions of the circuit court, a two-prong deferential standard of review is applied. We review the final order and the ultimate disposition under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard.").

With specific respect to a circuit court's order concerning a minor child's custody, we previously have held that

> ""'[t]he exercise of discretion by a trial court in awarding custody of a minor child will not be disturbed on appeal unless that discretion has been abused; however, where the trial court's ruling does not reflect a discretionary decision but is based upon an erroneous application of the law and is clearly wrong, the ruling will be reversed on appeal." Syl. pt. 2, *Funkhouser v. Funkhouser*, 158 W. Va. 964, 216 S.E.2d 570 (1975), *superseded by statute on other grounds as stated in David M. v. Margaret M.*, 182 W. Va. 57, 385 S.E.2d 912 (1989).' Syl. Pt. 1, *In re Abbigail Faye B.*, 222 W. Va. 466, 665 S.E.2d 300 (2008)[, *superseded by statute on other grounds as stated in In re Antonio R.A.*, 228 W. Va. 380, 719 S.E.2d 850 (2011)]." Syl. Pt. 2, *In re Antonio R.A.*, 228 W. Va. 380, 719 S.E.2d 850 (2011).

Syl. pt. 2, *In re Guardianship of A.C.*, 240 W. Va. 23, 807 S.E.2d 271 (2017). *See also* Syl. pt. 4, *Hammack v. Wise*, 158 W. Va. 343, 211 S.E.2d 118 (1975) ("Although the exercise of discretion by a trial court in awarding custody of a child will not ordinarily be disturbed, when it clearly appears that such discretion has been abused, the decision awarding custody will be reversed.").

Finally, because guardianship matters are governed by statutory law in this State, we further accord a plenary review to the circuit court's interpretation and application of the relevant statute. "Where the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review." Syl pt. 1, *Chrystal R.M. v. Charlie A.L.*, 194 W. Va. 138, 459 S.E.2d 415 (1995). *See also* Syl. pt. 1, *Appalachian Power Co. v. State Tax Dep't of W. Va.*, 195

W. Va. 573, 466 S.E.2d 424 (1995) ("Interpreting a statute or an administrative rule or regulation presents a purely legal question subject to *de novo* review."). With these standards in mind, we proceed to consider the parties' arguments.

## III.

## DISCUSSION

In his appeal to this Court, Father contends that the Guardians' role as guardians of his minor child should be terminated and that he, as K.E.'s biological father, should be awarded her custody. The Guardians counter that Father has not demonstrated a "material change of circumstances" as required by West Virginia Code section 44-10-3(j) to terminate or revoke their guardianship. To determine which custodial arrangement serves the child's best interests, we must examine both the guardianship statute and the circuit court's order applying the guardianship statute to the facts of this case.

Guardianship of a child in West Virginia is governed by statute:

> A family or circuit court's authority to appoint a suitable person as a guardian for a minor, including a minor above the age of fourteen, is derived from West Virginia Code § 44-10-3 (2010), which grants courts discretion in determining when the appointment of a guardian for a minor is appropriate[.]

Syl. pt. 5, in part, *In re Antonio R.A.*, 228 W. Va. 380, 719 S.E.2d 850. Specifically, West Virginia Code section 44-10-3(f) provides that

> [t]he court may appoint a guardian for a minor if the court finds by clear and convincing evidence that the appointment is in the minor's best interest and:

7

(1) The parents consent;

(2) The parents' rights have been previously terminated;

(3) The parents are unwilling or unable to exercise their parental rights;

(4) The parents have abandoned their rights by a material failure to exercise them for a period of more than six months; or

(5) There are extraordinary circumstances that would, in all reasonable likelihood, result in serious detriment to the child if the petition is denied.

If the factors enumerated in subsection (f) are not present, or have not been considered, the resulting guardianship is temporary in nature:

Whether or not one or more of the conditions of subsection (f) have been established, the court may appoint a temporary guardian for a minor upon a showing that an immediate need exists or that a period of transition into the custody of a parent is needed so long as the appointment is in the best interest of the minor. The temporary guardian has the authority of a guardian appointed pursuant to subsection (f) but the duration of the temporary guardianship may not exceed six months. A temporary guardianship may be extended beyond six months upon further order of the court finding continued need in the best interest of the minor.

W. Va. Code § 44-10-3(g). Finally, pursuant to subsection (h),

[a]ny suitable person may be appointed as the minor's guardian. A parent shall receive priority subject only to the provisions of subsections (d)[5] and (f) above. However, in

_____

[5] Subsection (d) does not apply to the facts of this case because there are no other, contemporaneous proceedings concerning K.E.'s custody. *See* W. Va. Code § 44-10-3(d) ("Any responsible person with knowledge of the facts regarding the welfare and best interests of a minor may petition for an appointment of a guardian except a parent or other person whose rights to the minor have been terminated. No guardianship petition

8

every case the competency and fitness of the proposed guardian must be established and a determination made that the appointment is in the best interest of the child.

W. Va. Code § 44-10-3(h) (footnote added).

To determine whether the circuit court's order continuing K.E.'s guardianship placement with the Guardians was correctly entered, we must consider the law governing guardianship proceedings. As we noted above, statutory law, specifically West Virginia Code section 44-10-3, governs the appointment of guardians; therefore, our consideration of this issue is guided by the rules of statutory construction. When examining a statute to determine its meaning, we previously have held that "[t]he primary object in construing a statute is to ascertain and give effect to the intent of the Legislature." Syl. pt. 1, *Smith v. State Workmen's Comp. Comm'r*, 159 W. Va. 108, 219 S.E.2d 361 (1975). Additionally, "[a] statutory provision which is clear and unambiguous and plainly expresses the legislative intent will not be interpreted by the courts but will be given full force and effect." Syl. pt. 2, *State v. Epperly*, 135 W. Va. 877, 65 S.E.2d 488 (1951). Similarly, "[i]t is not for this Court arbitrarily to read into a statute that which it does not say. Just as courts are not to eliminate through judicial interpretation words that were purposely included, we are obliged not to add to statutes something the Legislature purposely omitted." Syl. pt. 11, *Brooke B. v. Ray*, 230 W. Va. 355, 738 S.E.2d 21 (2013).

may be considered if the child who is the subject of the petition is involved in another court proceeding relating to custody or guardianship or if the petitioner is a parent seeking custodial rights adverse to the other parent.").

9

Considering the language of a prior version of the guardianship statute, we held that,

> "[p]ursuant to the plain language of W. Va. Code § 44-10-3(a) (2006) (Supp. 2007), the circuit court or family court of the county in which a minor resides may appoint a suitable person to serve as the minor's guardian. In appointing a guardian, the court shall give priority to the minor's mother or father. 'However, in every case, the competency and fitness of the proposed guardian and the welfare and best interests of the minor shall be given precedence by the court when appointing the guardian.' W. Va. Code § 44-10-3(a)." Syl. Pt. 6, *In re Abbigail Faye B.*, 222 W. Va. 466, 665 S.E.2d 300 (2008)[, *superseded by statute on other grounds as stated in In re Antonio R.A.*, 228 W. Va. 380, 719 S.E.2d 850 (2011)].

Syl. pt. 3, *In re Guardianship of A.C.*, 240 W. Va. 23, 807 S.E.2d 271. *See also* Syl. pt. 3, in part, *Mathews v. Wade*, 2 W. Va. 464 (1868) ("By the Code of Virginia, 1860, a lawfully appointed guardian has the custody of his ward and the care and management of his estate, but the father of the minor, if living, and in case of his death, the mother, while she remains unmarried, shall, if fit for the trust, be entitled to the custody of the person of the minor, and the care of his education."). Having examined the statutory language applicable to the issues raised in this case, we likewise find that the wording of the current version of West Virginia Code section 44-10-3 also is clear and plainly expresses the Legislature's intent to favor a child's parent, if he/she is fit, to serve as his/her child's guardian provided such custodial placement comports with the child's best interests. *See* W. Va. Code § 44-10-3(h).

10

Because the instant appeal seeks to terminate the Guardians' guardianship of K.E., it is necessary to consider the basis upon which the circuit court initially granted the guardianship to determine whether Father has demonstrated a "material change of circumstances" sufficient to terminate it. In its February 20, 2018 order granting the guardianship, the circuit court made the following findings of fact:

> 1. An ex parte order was entered on November 14, 2017[,] granting temporary guardianship to the [Guardians] and a temporary order further granted temporary guardianship following a hearing held on November 27, 2017[,] pending further investigation.
>
> 2. The child was in the primary legal custody of the respondent mother . . . until her arrest. The respondent mother is currently incarcerated and does not have a current release date.
>
> 3. The Department has not substantiated any abuse or neglect by either parent to the minor child. The [Department] recommends that the guardianship be granted.
>
> 4. The guardian *ad litem* has conducted an investigation and recommends that the guardianship be granted and that [it] is in the best interests of the child.
>
> 5. There are no other filings before the Court.
>
> 6. It is in the best interests of the minor child to grant the petition [for] guardianship filed by [the Guardians].
>
> 7. It is in the best interests of the minor child to continue the respondent father's visitation as decreed in the final parenting order.

The court additionally ordered that "[t]he [Guardians] are granted custody and guardianship of the minor child, K[.] E[.]" and "[t]he Respondent father shall exercise visitation as outlined in the prior final parenting order."

11

However, noticeably absent from the circuit court's order establishing the guardianship is any reference to the guardianship statute, *i.e.*, West Virginia Code section 44-10-3; any findings, by clear and convincing evidence, that one or more of the requisite statutory factors set forth in subsection (f) warranted the guardianship; or any explanation as to why Father did not receive priority or was determined to be unfit as required by subsection (h). Other than observing that Mother has been, and remains, incarcerated, the circuit court also did not identify what "immediate need" exists to require the appointment of the Guardians or explain that "a period of transition into the custody of a parent is needed" as set forth in West Virginia Code section 44-10-3(g).

Although the parties contend that the circuit court provided additional insight into its rulings during the hearing giving rise to its February 20, 2018 guardianship order, we repeatedly have recognized that "[i]t is a paramount principle of jurisprudence that a court speaks only through its orders." *Legg v. Felinton*, 219 W. Va. 478, 483, 637 S.E.2d 576, 581 (2006). *Accord Harvey v. Harvey*, 171 W. Va. 237, 241, 298 S.E.2d 467, 471 (1982) ("That a court of record speaks only through its records or orders has been generally affirmed by this Court in subsequent cases."). Thus, where, as here, the parties suggest that the circuit court's oral statements preceding its written ruling helped to explain the reasons for the entry of the court's guardianship order, we nevertheless are constrained to rely solely upon the circuit court's written order as that is the ruling that controls and definitively announces the court's decision to establish a guardianship and to entrust the Guardians with the care and custody of K.E. *See Tennant v. Marion Health Care Found.,*

*Inc.*, 194 W. Va. 97, 106 n.5, 459 S.E.2d 374, 383 n.5 (1995) ("[I]t is clear that where a circuit court's written order conflicts with its oral statement, the written order controls. Therefore, 'we are left to decide this case within the parameters of the circuit court's order.'" (quoting *State v. White*, 188 W. Va. 534, 536 n.2, 425 S.E.2d 210, 212 n.2 (1992))). *See also Murrell B. v. Clarence R.*, ___ W. Va. ___, ___ n.43, 836 S.E.2d 9, 20 n.43 (2019) (noting that "the order of adoption is prime, and the circuit court's oral statements, uttered before entry of the 2014 Order of Adoption, cannot add to or subtract from the final effect of that order" and that "[i]f there is a conflict between the circuit court's oral statements during the June 2014 hearing and the 2014 Adoption Order, the Adoption Order controls").

Therefore, regardless of the reasons for its ruling that the court may have announced orally, our review of the propriety of the guardianship arrangement in this case is limited to the justifications set forth in the circuit court's written order entered February 20, 2018. Because this order does not reference *any* of the statutory factors for the appointment of a guardian enumerated by subsection (f), we must presume that the appointment of the Guardians to serve in that capacity was temporary, pursuant to subsection (g), although the satisfaction of those criteria also is not apparent from the circuit court's order. Accordingly, absent clear and convincing evidence that any of the factors listed in subsection (f) require the appointment of a guardian for K.E., we must find that the circuit court's February 20, 2018 order appointing the Guardians was a temporary order.

Pursuant to West Virginia Code section 44-10-3(g), "the duration of the temporary guardianship may not exceed six months," although "[a] temporary guardianship may be extended beyond six months upon further order of the court finding *continued need* in the best interest of the minor." *Id.* (emphasis added). As a temporary guardianship, then, the Guardians' appointment to serve as K.E.'s guardian does not, as stated in subsection (g), continue for an indefinite period of time; rather, a temporary guardianship is limited to six months, subject to subsequent extension by the circuit court. Under these circumstances, when Father filed his motion to terminate the Guardianship in April 2018, he was *not* required to satisfy the high threshold of a "material change of circumstances" required by subsection (j). Rather, Father was required to show only that the justification for a temporary guardianship no longer exists by demonstrating either that no "immediate need exists" or no "period of transition into the custody of a parent is needed" to support the continuation of the temporary guardianship. *See* W. Va. Code § 44-10-3(g).

In summary, because the circuit court's February 20, 2018 guardianship order did not sufficiently address the statutory factors of West Virginia Code section 44-10-3(f) required for the appointment of a guardian, the court's order must be treated as one establishing a temporary guardianship. Moreover, because the court applied the wrong burden of proof to Father's request to terminate the guardianship, we must reverse the circuit court's August 21, 2018 order and remand this case for further proceedings to determine whether there exists a "continued need" such that the best interests of K.E.

require the continuation of the subject guardianship as well as to consider whether Father, who has superior rights to the custody of his child over the Guardians, is fit to have custody, and, if he is, whether such placement serves the child's best interests. *See* W. Va. Code §§ 44-10-3(g), (j).

Upon remand, the circuit court's determination as to whether continuation of the current guardianship is required by a "continued need," W. Va. Code § 44-10-3(g), and serves the child's best interests should consider our longstanding precedent recognizing the fundamental rights of parents to the custody of their children. In this regard, we have held that, absent a showing that the child's parent is unfit, the child's parent has a superior right to the custody of the child:

> A parent has the natural right to the custody of his or her infant child and, unless the parent is an unfit person because of misconduct, neglect, immorality, abandonment or other dereliction of duty, or has waived such right, or by agreement or otherwise has transferred, relinquished or surrendered such custody, the right of the parent to the custody of his or her infant child will be recognized and enforced by the courts.

Syl., *Whiteman v. Robinson*, 145 W. Va. 685, 116 S.E.2d 691 (1960). *Accord* Syl., *State ex rel. Kiger v. Hancock*, 153 W. Va. 404, 168 S.E.2d 798 (1969). *See also* Syl. pt. 2, in part, *Honaker v. Burnside*, 182 W. Va. 448, 388 S.E.2d 322 (1989) ("[C]ustody of [a] minor child should be with the natural parent absent proof of abandonment or some form of misconduct or neglect[.]"). We also have held that,

> [i]n the law concerning custody of minor children, no rule is more firmly established than that the right of a natural parent to the custody of his or her infant child is paramount to

15

that of any other person; it is a fundamental personal liberty protected and guaranteed by the Due Process Clauses of the West Virginia and United States Constitutions.

Syl. pt. 1, *In re Willis*, 157 W. Va. 225, 207 S.E.2d 129 (1973).

This custodial preference accorded to a child's fit parent prevails even if another person might provide a better home for the child and is defeated only if the child's best interests dictate a different custodial placement is more suitable for the child. Therefore, "[w]hile courts always look to the best interests of the child in controversies concerning his or her custody, such custody should not be denied to a parent merely because some other person might possibly furnish the child a better home or better care." Syl. pt. 3, *Hammack v. Wise*, 158 W. Va. 343, 211 S.E.2d 118. Again, though, the ultimate factor for determining to whom a child's custody should be awarded is the best interests of the child subject to the guardianship proceedings. "Although parents have substantial rights that must be protected, the primary goal . . . in all family law matters . . . must be the health and welfare of the children." Syl. pt. 3, in part, *In re Katie S.*, 198 W. Va. 79, 479 S.E.2d 589 (1996). *See also* Syl. pt. 7, *Matter of Brian D.*, 194 W. Va. 623, 461 S.E.2d 129 (1995) ("Cases involving children must be decided not just in the context of competing sets of adults' rights, but also with a regard for the rights of the child(ren)."); Syl. pt. 4, *Green v. Campbell*, 35 W. Va. 698, 14 S.E. 212 (1891) ("But the court is in no case bound to deliver the child into the custody of any claimant, but may leave it in such custody as the welfare of the child at the time appears to require."). Accordingly, on remand, the circuit court is directed to consider not only the guardianship statute that governs these

16

proceedings, but also whether Father is fit to have custody of his child as well as the custodial arrangement dictated by K.E.'s best interests.

## IV.

## CONCLUSION

For the reasons stated in this opinion, we reverse the August 21, 2018 order of the Circuit Court of Cabell County. We further remand this case to the circuit court to determine whether the child's guardianship should continue or whether her custody should be returned to one or both of her parents.

Reversed and Remanded.