**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

**FILED**

**June 6, 2024**

released at 3:00 p.m.
C. CASEY FORBES, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

*In re* **K.V.**

**No. 23-102**      (Kanawha County 20-JA-459)

**MEMORANDUM DECISION**

This is an appeal filed by Intervenors S.V. and H.V. ("petitioners"), who are the maternal grandparents of the child K.V.[1] Petitioners seek reversal of the February 3, 2023, order of the Circuit Court of Kanawha County that dismissed the petition for abuse and neglect[2] against the child's father, J.V., based upon a lack of clear and convincing evidence that the child was abused or neglected by J.V. or that J.V. was a neglecting[3] parent. The circuit court also ordered that the child K.V., who had lived with petitioners for more than two years, be immediately returned to respondent J.V.'s physical and legal custody in lieu of a gradual transition of custody, as requested by petitioners.[4] Petitioners raise an array of alleged errors that they contend warrant reversal of the circuit court's order. Upon our review, we find no reversible error and determine that a memorandum decision affirming the circuit court's order is appropriate. *See* W. Va. R. App. P.

---

[1] We use initials instead of full names to protect the identities of the juveniles involved in this case. *See* W. Va. R. App. P. 40(e). One of the children and his biological father, who is not a respondent in this appeal, have the same initials; therefore, we refer to that father as B.W.-1 and the child as B.W.-2. *See infra.*

[2] Pursuant to West Virginia Code § 5F-2-1a (2024), the agency formerly known as the West Virginia Department of Health and Human Resources was terminated, effective January 1, 2024, and is now three separate agencies—the Department of Health Facilities, the Department of Health, and the Department of Human Services. *See* W. Va. Code § 5F-1-2 (2024). For purposes of abuse and neglect appeals, the agency is now the Department of Human Services ("DHS").

[3] Although the February 3, 2023, order states that there was insufficient evidence that "[J.V.] is an abusing parent," it is clear that the circuit court found that the evidence was insufficient to prove that J.V. was a "neglecting" parent. At the January 31, 2023, adjudicatory hearing, the circuit court expressly found that there was not "clear and convincing evidence that the child was neglected by the father, therefore, I am going to dismiss this case." *See infra.*

[4] Two other children, C.W. and B.W.-2, who have the same biological mother as K.V., were ordered to remain in their current placements. C.W. resides with petitioners, while B.W.-2, who was born after the initial petition for abuse and neglect was filed, *see infra.*, resides with a different foster family. C.W. and B.W.-2 are not at issue in this appeal.

1

21.[5]

On September 14, 2020, DHS filed an abuse and neglect petition naming J.V. and K.V.'s biological mother, E.V., as respondents. The petition also named as a respondent B.W.-1, who is the biological father of K.V.'s half-sibling, C.W. The petition alleged that, at birth, C.W. tested positive for methamphetamine, amphetamines, and THC; that mother E.V. also tested positive for amphetamines and methamphetamines after C.W.'s birth; that E.V. admitted to using drugs while pregnant with C.W.; that E.V. wanted to breastfeed C.W. despite testing positive for drugs; and that E.V. had little to no prenatal care during her pregnancy with C.W. The petition further alleged that, at times, the respondent parents failed to provide the children with the necessary food, clothing, supervision, and housing, including financial support, and that they are not sufficiently motivated and organized to provide for the children's needs on an ongoing basis. The children were placed with petitioners, S.V. and H.V., their maternal grandparents.

A preliminary hearing was held on September 22, 2020. According to the preliminary hearing order, caseworker Jasmine Duiguid testified that the petition was filed due to "Respondent Mother giving birth to a drug affected infant . . . , no prenatal care, and that the Respondent Mother attempted to breastfeed the infant while having drugs in her system." The order specifically found that "[t]he Respondent Father, [J.V.], is non-abusing/neglecting."[6] The children were ordered to remain in the custody of DHS and in their placement with petitioners.

On October 30, 2020, DHS filed with the circuit court a court summary prepared by CPS caseworkers indicating that the respondent parents had been scheduled for random drug screening and that "[a] walk through of [respondent J.V.'s] home was done by [a CPS caseworker]. His home was appropriate and clean. [K.V.] will be placed back with [J.V.] as soon as he works out childcare. . . . [J.V.] has been compliant with services." The circuit court subsequently granted respondent J.V.'s motion that "would give [DHS] the discretion to move [K.V.] into the physical custody of [J.V.] if he is able to arrange child care while he works."

The circuit court held an adjudicatory hearing with respect to mother E.V. on December 1, 2020. Based upon mother E.V.'s testimony admitting to drug use, the circuit court found mother E.V. to be an abusing and neglecting parent and the children, K.V. and C.W., to be abused and neglected children. The children were ordered to remain in their current placement with petitioners. Mother E.V. was granted a post-adjudicatory improvement period.

In a court summary filed by CPS caseworkers on March 4, 2021, it was reported that respondent J.V. had complied with services and participated in random drug screening, all of which were negative. Regarding his relationship with mother E.V. and the other adult respondent, B.W.-1, respondent J.V. informed the CPS caseworker that mother E.V. and B.W.-1 were staying with

---

[5] Petitioners appear by counsel Jennifer Dempsey Meeteer. Attorney General Patrick Morrissey and Assistant Attorney General Andrew T. Waight appear on behalf of DHS, and respondent J.V. is represented by Carl J. Dascoli, Jr. The guardian ad litem is Matthew Smith.

[6] Initially, B.W.-1, the biological father of C.W., was also found to be non-abusing/neglecting; however, his parental rights were subsequently terminated. *See infra.*

J.V. at his home. The caseworker noted that J.V. has "taken up [for] [E.V.] and [is] making excuses for her failing drug screens." Regarding the status of the child K.V., it was reported that visits between the child and respondent J.V. "are going well[,]" and that "it is recommended [K.V.] be returned to the care and custody of [respondent J.V.]." Because J.V. had not yet secured childcare, the child K.V. was ordered to remain in his placement with petitioners.

On March 19, 2021, DHS filed an amended petition. As it related to respondent J.V., the petition alleged that "almost all of [K.V.'s] teeth are completely rotten" and that "[J.V.] frequently allows [mother E.V.] and [B.W.-1] to stay in his home."[7]

Subsequent court summaries prepared by CPS caseworkers and filed with the circuit court on May 3, 2021, and July 14, 2021, respectively, indicated that both respondent J.V. and mother E.V. explained that certain medications had caused K.V.'s tooth decay. The summaries reiterated that respondent J.V. had been compliant with services and had participated in random drug screens, all of which had been negative, and that J.V. "[took] up for [mother E.V.] and [made] excuses for her failing her drug screens." The May 3, 2021, court summary also reiterated that the plan is for K.V. to be returned to respondent J.V.'s custody whenever J.V. is able to secure childcare.[8]

An adjudicatory hearing on the amended petition (concerning the respective fathers, J.V. and B.W.-1) was held on July 14, 2021, at which respondent J.V. agreed to place K.V. in a guardianship with petitioners. The circuit court accepted J.V.'s consent to guardianship and by order entered July 19, 2021, ordered that respondent J.V. be dismissed from the proceedings. As to B.W.-1., the child C.W.'s father, the circuit court found him to be an abusing parent.

Upon the birth of a subsequent child (the child B.W.-2) to mother E.V. and B.W.-1, a second amended petition was filed on September 2, 2021, alleging that mother E.V. admitted to using methamphetamine during her pregnancy. The second amended petition named J.V. as a respondent. It requested that the parental rights of mother E.V. and B.W.-1 be terminated.[9]

On February 2, 2022, respondent J.V., self-represented, filed a petition seeking revocation of petitioners' guardianship of the child K.V. In his petition, respondent J.V. represented that

---

[7] The amended petition also included allegations of drug use by B.W.-1 as well as his failure to submit to drug screens and participate in parenting and adult life skills education.

[8] The May 3, 2021, court summary further stated the caseworker was told that J.V. "plans on using [Mother E.V.] as a source of childcare." The summary noted that visits between respondent J.V. and the child continue to go well with the exception of a concern relating to a visit that occurred on March 29, 2021, suggesting that the child had had contact with mother E.V. during the visit when J.V. and the child had gone into the woods behind the house. The latter, July 14, 2021, summary noted, however, that "[c]urrently there have been no issues with the visitation[s]" between respondent J.V. and the child K.V. Both summaries reflected the recommendations that the parental rights of mother E.V. be terminated and respondent J.V. and B.W.-2 be adjudicated.

[9] As previously noted, the child B.W.-2, who was subsequently born to mother E.V. and B.W.-1 was placed with a foster family other than petitioners and is not at issue in this appeal.

"[s]ubstantial changes have been made. I have completed parenting classes and pass all my drug screens. I own my home and have transportation. I work and have worked full time at a hospital and have obtained childcare for my son upon his return." DHS objected to the petition because, according to a March 31, 2022, court summary, respondent J.V. "has not been participating in services since his relinquishment [sic], and due to this the [DHS] has not [sic] knowledge of his current situation regarding his ability to adequately parent." However, the summary also noted that there have been "no issues" with the supervised visitation between respondent J.V. and the child K.V.

On June 2, 2022, respondent J.V. filed a motion to set aside the circuit court's order of guardianship. A dispositional hearing was held on June 8, 2022, at which the circuit court granted respondent J.V.'s motion.[10] and ordered J.V. to submit to random drug screens. The circuit court also terminated the parental rights of mother E.V. and B.W.-1 to their children. The matter was set

---

[10] In the July 19, 2021, order appointing petitioners as guardians of the child K.V., the circuit court characterized the guardianship as "permanent." In his motion to set the guardianship aside, respondent J.V. argued that the record clearly reflected that it was his intention to agree to a guardianship that was temporary in nature, pointing to the portion of the July 14, 2021, hearing transcript in which J.V.'s then counsel indicated that J.V. "is willing to allow – [the child K.V.] . . . to remain with [petitioners] in the guardianship, with the understanding that should the circumstances later permit and then [J.V.] could petition the [c]ourt for a modification and have custody returned to him." The court stated, "I will grant that."

On appeal, petitioners argue that the circuit court erred in setting the guardianship aside because respondent J.V. failed to satisfy the statutory requirements for revocation or termination of a guardianship appointment made pursuant to West Virginia Code § 44-10-3(f)(1) – that is, he failed to adequately demonstrate that K.V. "is no longer in need of the assistance or protection of a guardian due to changed circumstances and the termination of the guardianship would be in [K.V.'s] best interest." W. Va. Code § 44-10-3(i)(4). Because we find that the record clearly shows that J.V. intended to consent to the appointment of petitioners as K.V.'s guardians on a temporary basis, West Virginia Code § 44-10-3(g) (rather than § 44-10-3(i)(4)) applies. Under subsection (g), "[w]hether or not one or more of the conditions of subsection (f) have been established, the court may appoint a temporary guardian for a minor upon a showing that an immediate need exists . . . so long as the appointment is in the best interest of the minor[;]" "the duration of the temporary guardianship may not exceed six months" but may be extended upon the court "finding continued need in the best interest of the minor." W. Va. Code § 44-10-3(g). Thus, when J.V. sought to revoke the guardianship appointment approximately seven months later, he was not required to prove a "material change of circumstances" under subsection (j). *See id.* (providing that when a parent seeks to revoke a guardianship, he or she must prove "a material change in circumstances" and that revocation is in the child's best interest). "Rather, [he] was required to show only that the justification for a temporary guardianship no longer exists by demonstrating either that no 'immediate need exists' or no 'period of transition into the custody of a parent is needed' to support the continuation of the temporary guardianship. *See* W. Va. Code § 44-10-3(g)." *Terrence E. v. Christopher R.*, 243 W. Va. 202, 210, 842 S.E.2d 755, 763 (2020). Because J.V. demonstrated that an immediate need for temporary guardianship no longer existed, the circuit court did not err in terminating it.

for an adjudicatory hearing with respect to respondent J.V.

The circuit court held a hearing on September 28, 2022, at which it ordered that respondent J.V. have supervised visits with the child K.V. and further ordered that the guardian ad litem "shall have the discretion [to] modify said visitation, including to permit unsupervised visitation[.]" The circuit court further ordered that J.V. was no longer required to submit to random drug screens because he had consistently screened negative. The court continued adjudication "to allow the parties to hold [a Multi-Disciplinary Team meeting]."

On November 16, 2022, petitioners, by counsel, filed a motion to intervene arguing that as K.V.'s foster parents and biological grandparents who have had custody of K.V. for the preceding twenty-six months, they should be permitted to participate as parties and to adopt the child K.V.[11] By order entered on December 8, 2022, the circuit court denied petitioners' motion.

A court summary filed by CPS caseworkers on December 9, 2022, indicated that respondent J.V. "has current visitations with [K.V.] once weekly."[12]

On January 6, 2023, petitioners filed a petition for a writ of prohibition with this Court, seeking to prohibit enforcement of the order denying their motion to intervene and, as additional relief, petitioners requested that this Court halt enforcement of orders granting services to respondent, permit petitioners to attend hearings and MDT meetings, and schedule a dispositional hearing.

Subsequently, on January 25, 2023, petitioners also filed with this Court a motion to stay the underlying abuse and neglect proceedings until the petition for a writ of prohibition that was previously filed has been resolved.[13] By order entered that same day, the circuit court, sua sponte, vacated its prior order denying petitioners' motion to intervene and entered an order granting the motion.

The circuit court held an adjudicatory hearing concerning respondent J.V. on January 31, 2023. At the commencement of the proceedings, petitioners, by counsel, made an oral motion to stay the proceedings until a decision was rendered by this Court on their petition for a writ of prohibition. Petitioners argued that because the issues before both tribunals were the same, the circuit court should not proceed until this Court rendered a decision on the petition. The circuit court denied the motion.

---

[11] Petitioners' motion to intervene was also filed with respect to C.W., of whom they also had custody. However, as noted above, C.W. is not at issue in this appeal.

[12] The December 9, 2022, court summary also recommended that respondent J.V. be granted an improvement period.

[13] We note that, by order entered on February 9, 2023, after entry of the final order that is the subject of this appeal, this Court granted petitioners' motion for stay. By order entered on February 27, 2023, we dismissed the petition for writ of prohibition as moot.

5

During the adjudicatory hearing, DHS advised the circuit court that it had no evidence of abuse or neglect to present against respondent J.V., stating,

> This petition was filed, at least originally entirely based on allegations pertaining to the other two parents, . . . whose parental rights were long ago terminated.
>
> At some point sometime [sic] ago, the Petition was amended to include some allegations that kind of pertained to [respondent J.V.].
>
> But really the only issue that, those allegations were . . . that we had reason to believe that he was continuing to associate with the other two parents. That, that although may have been true at one time, that has not been an issue for quite sometime [sic]. At least well over a year, probably at least a year and a half, Your honor.
>
> . . . .
>
> There was one other allegation about the child's teeth and numerous dental problems. But, that was, you know, that could have been just as much the mother's fault, . . . as well as [respondent J.V.].

The guardian ad litem likewise presented no evidence of abuse or neglect against respondent J.V. Petitioners were permitted to present evidence.[14] Petitioner S.V., the child K.V.'s grandmother, testified concerning the condition of the child K.V.'s teeth as depicted in photographs alleged to have been taken by petitioners at the time K.V. was placed in their custody. Petitioners failed to present any expert medical testimony as to the cause of the tooth decay. Petitioner S.V. also testified that respondent J.V. had never cared for the child K.V. on his own; however, she admitted that the child lived with respondent J.V. and mother E.V. for the five years prior to his removal and that she (Petitioner S.V.) could not know whether J.V. ever cared for the child K.V. without help. Respondent J.V. also testified. He stated that, prior to K.V.'s removal from the home, he took K.V. to the dentist to address the condition of his teeth, which he believed was caused by certain medications K.V. had been taking. Respondent J.V. also testified that he brushed and flossed K.V.'s teeth.

At the conclusion of the hearing, the circuit court stated,

> All I have is [sic] pictures that someone has dental decay. No basis for why it [sic] decayed. . . . [DHS] is required [to prove] by clear and convincing evidence that [J.V.] abused or neglect this child . . . to cause him to have dental decay to the point that . . . it could be

---

[14] Two caseworkers who were assigned to the case were present at the hearing. Although the circuit court advised petitioners that the caseworkers were available to testify, petitioners elected not to call them as witnesses.

considered neglect. I have no expert testimony that that occurred.

I have, although I have testimony that "[J.V.] never took care of the children without someone's help." So it's clear to me that he never had sole custody of the child or completely, singularly in his custody or care.

The circuit court ultimately concluded that neither DHS nor petitioners proved by clear and convincing evidence that respondent J.V. neglected the child K.V. or that K.V. was an abused or neglected child and, accordingly, dismissed J.V. and K.V. from the proceedings. Over petitioners' objection, the court ordered that K.V. be returned to the physical and legal custody of respondent J.V. forthwith, thereby denying petitioners' motion to gradually transition K.V. to J.V.'s physical custody.[15] It is from this order that petitioners now appeal.[16]

Our standard of review for abuse and neglect cases is well established:

Although conclusions of law reached by a circuit court are

---

[15] Petitioners subsequently filed a motion to be recognized as K.V.'s psychological parents and/or for visitation. By order entered March 6, 2023, the circuit court concluded that the motion was moot because respondent J.V. and the child K.V. had been dismissed from the underlying abuse and neglect proceedings and no issues were pending either before the circuit court or this Court. The order noted that, "[s]hould [petitioners] pursue the issue of grandparent visitation regarding [K.V.], it should be addressed through the filing of a petition in a separate case as [J.V.] and [K.V.] . . . are no longer parties in this matter." The docket sheet does not reflect, nor do petitioners represent, that they appealed this order. Therefore, to the extent petitioners now argue, albeit tangentially, that the March 6th order was erroneous, that issue is not properly before us. *But see* discussion, *infra.*

[16] To the extent petitioners argue that, once petitioners filed a petition for a writ of prohibition with this Court, the circuit court lacked jurisdiction to proceed with the adjudicatory proceeding and, ultimately, to dismiss the petition for abuse and neglect, we dismiss that argument out of hand. First, this Court had not assumed jurisdiction of the underlying abuse and neglect action because it had not issued a stay at the time of the January 31, 2023, hearing. *See State ex rel. W. Va. Dept. of Health and Hum. Res. v. Bloom*, 247 W. Va. 433, 446 n.12, 880 S.E.2d 899, 912 n.12 (2022) (finding that circuit court improperly purported to exercise jurisdiction *after* this Court had issued a stay of the underlying proceeding pending resolution of a petition for writ of prohibition that had been filed with the Court because "'[o]nce this Court takes jurisdiction of a matter pending before a circuit court, the circuit court is without jurisdiction to enter further orders in the matter except by specific leave of this Court.'" (quoting Syl. Pt. 3, *Fenton v. Miller*, 182 W. Va. 731, 391 S.E.2d 744 (1990)). Second, this Court did not issue a rule to show cause in prohibition, which would have "stay[ed] all further proceedings in the underlying action for which an award of a writ of prohibition is sought." W. Va. R. App. P. 16(j), in part. Thus, petitioners' argument that the circuit court lacked jurisdiction to conduct an adjudicatory hearing, dismiss the petition for abuse and neglect against respondent J.V., and return the child K.V. to his father's custody, is without merit.

subject to de novo review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety.

Syl. Pt. 1, *In the Interest of Tiffany Marie S.*, 196 W. Va. 223, 470 S.E.2d 177 (1996).

We first address petitioners' argument that the circuit court erred in its ultimate conclusion that the evidence was insufficient to adjudicate respondent J.V. as a neglecting parent. Petitioners argue that there was clear and convincing evidence that K.V.'s teeth were in significant decay at the time the amended petition was filed thereby proving that K.V. was a "neglected child" [17] within the meaning of West Virginia Code § 49-1-201. Therefore, petitioners argue, the circuit court clearly erred in concluding that J.V. was not a neglecting parent and in dismissing the petition against him. We disagree.

At the adjudicatory hearing, respondent J.V. testified that during the year preceding K.V.'s removal from the home, he took K.V. to the dentist to address the condition of his teeth, which J.V. believed was caused by certain medications K.V. had been taking. Respondent J.V. further testified that he brushed and flossed K.V.'s teeth. Neither DHS nor the guardian ad litem presented evidence of neglect against J.V. and did not oppose J.V.'s motion to dismiss the petition. Based upon the limited evidence presented, the circuit court determined that, although there was evidence that K.V.'s teeth were in decay, no expert testimony was presented opining that the decay was the result of dental neglect. We are similarly restricted by the evidence (and lack of evidence) presented. Accordingly, we cannot conclude that the circuit court clearly erred in finding that respondent J.V. was not a neglecting parent and in dismissing the petition against him.

We next address petitioners' argument that the circuit court erred in ordering that K.V. be immediately transferred to the custody of respondent J.V. Petitioners argue that K.V. had spent more than two years in their continuous care, and so a gradual transition of physical custody was required.

_____

[17] Though petitioners also state that respondent J.V. should have been adjudicated as an abusing or neglectful parent because he "frequently allowed [mother] E.V. and B.W.-1 to stay in his home," they fail to argue this point in their brief. We decline to address this purported argument because, "[a]lthough we liberally construe briefs in determining issues presented for review, issues . . . mentioned only in passing but [that] are not supported with pertinent authority, are not considered on appeal." *State v. LaRock*, 196 W. Va. 294, 302, 470 S.E.2d 613, 621 (1996).

We agree with petitioners that "it has been long understood that the law governing child custody directs that a child's best interests are best served by a gradual transition to a new home." *Kristofer O. v. Mazzone*, 227 W. Va. 184, 194, 706 S.E.2d 381, 391 (2011). Indeed, we have recognized:

> It is a traumatic experience for children to undergo sudden and dramatic changes in their permanent custodians. Lower courts in cases such as these should provide, whenever possible, for a gradual transition period, especially where young children are involved. Further, such gradual transition periods should be developed in a manner intended to foster the emotional adjustment of the children to this change and to maintain as much stability as possible in their lives.

Syl. Pt. 3, *James M. v. Maynard,* 185 W. Va. 648, 408 S.E.2d 400 (1991). Despite this long-standing admonition, the January 31, 2023, hearing transcript reflects that the circuit court abruptly rejected petitioners' request for a gradual transition of custody without any discussion or apparent consideration of the effects that decision might have on K.V., who, by all accounts, had developed a close relationship with petitioners during the two years he lived with them in their home. The circuit court failed to consider the best interests of K.V. in this regard.

We are mindful, however, that "the over-arching purpose of our abuse and neglect statutory construct continues to be the correction of conditions of abuse and neglect and the return, if reasonably possible, of the children to their homes." *State ex rel. C.H. v. Faircloth*, 240 W. Va. 729, 741, 815 S.E.2d 540, 552 (2018). Respondent J.V., who was found to be neither abusing nor neglecting, had an inherent right to be reunified with K.V. *See In re Antonio R.A.*, 228 W. Va. 380, 390, 719 S.E.2d 850, 860 (2011). Indeed, from the commencement of the underlying proceedings, the recommendation by caseworkers was to reunify K.V. with his father whenever he was able to secure childcare, as he was employed; had submitted to random drug screenings, all of which were negative; was consistently compliant with services; had a clean and appropriate home; and enjoyed supervised visits with K.V. with "no issues." We have held:

> In the law concerning custody of minor children, no rule is more firmly established than that the right of a natural parent to the custody of his or her infant child is paramount to that of any other person; it is a fundamental personal liberty protected and guaranteed by the Due Process Clauses of the West Virginia and United States Constitutions.

Syl. Pt. 1, *In re Willis*, 157 W. Va. 225, 207 S.E.2d 129 (1973).

The obvious quandary the Court faces is that the abrupt transition of physical custody has, at this point, long-ago occurred. By the same token, we have generally recognized that "[a] child

9

has a right to continued association with individuals with whom he has formed a close emotional bond . . . provided that a determination is made that such continued contact is in the best interests of the child." Syl. Pt. 11, in part, *In re Jonathan G.*, 198 W. Va. 716, 482 S.E.2d 893 (1996). *See* Syl. Pt. 2, *State ex rel. Treadway v. McCoy*, 189 W. Va. 210, 429 S.E.2d 492 (1993) ("The best interests of a child are served by preserving important relationships in that child's life."). Accordingly, in the event petitioners, in a separate proceeding, seek regular visitation with K.V. in the future,[18] we strongly encourage the circuit court to consider whether, and to what extent, a continued association between K.V. and petitioners may be in K.V.'s best interests.[19]

For the foregoing reasons, we affirm the circuit court's order.

Affirmed.

**ISSUED:  June 6, 2024**

**CONCURRED IN BY:**
Chief Justice Tim Armstead
Justice Elizabeth D. Walker

---

[18] With respect to the extent of visitation and contact that has occurred between K.V. and petitioners since entry of the final order, the parties have provided conflicting reports. While DHS states that K.V. has had regular contact with petitioners and visits during holidays, school breaks, and long weekends, petitioners indicate that they have visited with K.V. five times since entry of the final order and that telephone contact has been intermittent.

[19] We fully recognize that the length of time K.V. remained with petitioners was, at least in part, a direct result of the inordinate delay in holding the adjudicatory hearing as to respondent J.V. *See* R. of Proc. for Child Abuse and Neglect 25 ("[w]hen a child is placed in the temporary custody of [DHS] or a responsible person . . . the final adjudicatory hearing shall commence within thirty (30) days of the temporary custody order . . . and must be given priority on the docket unless a preadjudicatory improvement period has been ordered"). It is inescapable that the duration of this case—specifically, the filing of the initial petition (as well as the amended petition against respondent J.V.) until the holding of the adjudicatory hearing—ran grossly afoul of this time limitation. Indeed, we have repeatedly instructed that the time limitations and standards provided in our abuse and neglect laws are mandatory and not to be "casually disregarded or enlarged without detailed findings demonstrating exercise of clear-cut statutory authority." *In re J.G., II*, 240 W. Va. 194, 204, 809 S.E.2d 453, 463 (2018). However, we are left with the fact that the relatively meager record before us neither explores nor explains the delays as it related to respondent J.V.'s adjudication and that, ultimately, there was insufficient evidence to adjudicate respondent J.V. as an abusing or neglecting parent. It is beyond cavil that "the best interests of the child is the polar star by which decisions must be made which affect children." *Michael K.T. v. Tina L.T.*, 182 W. Va. 399, 405, 387 S.E.2d 866, 872 (1989). The child K.V. has achieved permanency with his biological father and, according to the status updates recently filed with this Court, is doing well. Therefore, to reverse the circuit court's decision based upon the failure to comport with long-expired time limitations would, under the unique facts and circumstances before us, serve no useful purpose.

10

Justice John A. Hutchison
Justice William R. Wooton
Justice C. Haley Bunn